Muambo Martin Luther KABONGO (86–4078), Mesu Kabongo (86–4079), Petitioners,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

Nos. 86–4078, 86–4079.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1987.

Decided Jan. 26, 1988.

Rehearing Denied March 9, 1988.

Michael E. Piston (argued), Troy, Mich., for petitioners.

David Bernal, Allen W. Hausman, Robert Kendall, Jr., Mary Reed (argued), Office of I.N.S. Litigation, Criminal Div., Washington, D.C., Anthony Nyktas, Cincinnati, Ohio, for respondent.

Before KEITH, MILBURN and NELSON, Circuit Judges.

MILBURN, Circuit Judge.

Petitioners seek review of the Board of Immigration Appeals' ("the Board") dismissal of their appeal from the decision of the Immigration Judge ("IJ") ordering deportation and denying a request for the discretionary relief of voluntary departure.[1] For

---

1. The parties to this appeal concede that the status of petitioner Mesu Kabongo, as the alien spouse of a nonimmigrant student, is derivative of her husband's status, petitioner Muambo Ka-

the reasons that follow, we affirm the decision of the Board.

## I.

Petitioner Dr. Muambo Martin Luther Kabongo is a thirty-five-year-old national of Zaire who first entered the United States as a student in 1971. He last entered the United States on May 8, 1984. When he entered this country in 1971, he entered as a student with an F–1 student visa. *See* 8 U.S.C. § 1101(a)(15)(F).[2] Petitioner attended King College in Tennessee from September 1971 through May 1973. He then went to the University of Paris in Paris, France, for two years and then returned to the United States again in 1975. At that time, he attended the Eastern Mennonite College in Harrisonburg, Virginia, where he received a bachelor's degree. He then attended Penn State University for one year in a nondegree program.

Petitioner subsequently transferred to Cincinnati Medical College. This transfer was in violation of his F–1 student status. Deportation proceedings were commenced against petitioner in 1978, but he was granted the relief of voluntary departure by the Immigration & Naturalization Service ("INS"). Pursuant to his voluntary departure agreement, petitioner left the United States in June 1979 and relocated in France. In September 1979, he again returned to the United States with another F–1 student visa allowing him to study at the St. Thomas Institute in Cincinnati, Ohio.

Petitioner completed his doctoral studies at the St. Thomas Institute in Cincinnati, Ohio, on September 21, 1982. Petitioner, however, remained in Cincinnati through May 1983. At that time, he departed to Juarez, Mexico, where he attended medical school at the Escuela de Medicina de la Universidad Autonoma, Ciudad Juarez, Mexico.

While studying medicine in Ciudad Juarez, petitioner commuted, at least on a part-time basis, from El Paso, Texas, into Mexico. Petitioner testified at his deportation hearing that he crossed back and forth between the school in Mexico and his residence, which was in El Paso, and that he crossed the border at least once a day.

Petitioner also testified that he last crossed the border into the United States on May 8, 1984. He traveled to Ohio to resume his studies at the University of Cincinnati. However, he was arrested shortly after his arrival in Cincinnati and charged with two counts of making false statements in order to obtain student financial aid in violation of 18 U.S.C. § 1001 and one count of receiving funds by false statements in violation of 20 U.S.C. § 1097(a).

These criminal charges centered around an application which petitioner had made in May 1983 for a guaranteed student loan, a program administered by the United States Department of Education. On his application for the loan, the petitioner represented his status as "a U.S. citizen, national, or other listed related status." J.A. at 137a. Petitioner was convicted on all counts. His conviction was appealed to this court and was affirmed in an unpublished per curiam opinion on April 26, 1985. The United States Supreme Court denied certiorari on January 20, 1986. The petitioner was sentenced and received a suspended sentence and two probationary periods of three years to run concurrently.

Deportation proceedings were initiated against petitioner pursuant to the issuance of an order to show cause on May 29, 1984. The order to show cause alleged in part that petitioner entered the United States at El Paso, Texas, on May 8, 1984, in violation of 8 U.S.C. § 1251(a)(1), as an intending

bongo. *See* 8 U.S.C. § 1101(a)(15)(F)(ii). Further, since petitioner Mesu Kabongo was granted the relief of voluntary departure, she is a party only as to the issue of deportability. Accordingly, the discussion focuses on the status of her husband.

2. 8 U.S.C. § 1101(a)(15)(F)(i) excludes from the definition of immigrant, "an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student ... who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established ... institution ... in the United States...."

immigrant who entered the country without a valid immigrant visa. The order stated petitioner was excludable under 8 U.S.C. § 1182(a)(20).

The IJ found that petitioner was subject to deportation under 8 U.S.C. § 1251(a)(1), which provides that an alien is deportable who at the time of entry into the United States was excludable under the immigration law at the time of such entry.[3] The IJ found that at the time of the petitioner's entry on May 8, 1984, he was excludable. The conclusion as to excludability was premised on 8 U.S.C. § 1182(a)(20), which provides that any immigrant is excludable who at the time of entry into the United States does not have a valid entry document.[4]

In reaching his decision, the IJ concluded that petitioner was an "immigrant" as the term is defined in 8 U.S.C. § 1101(a)(15). Petitioner does not challenge this conclusion. The IJ also determined that when petitioner last entered the United States on May 8, 1984, he was "not in possession of the necessary documents for his admission." J.A. at 8a. Accordingly, petitioner was found deportable.

Turning to petitioner's request for the discretionary relief of voluntary deportation, the IJ found that petitioner was statutorily ineligible for such relief and that, in any case, as a matter of discretion, voluntary departure should not be granted. Voluntary departure is available under 8 U.S. C. § 1254(e), which provides:

> The Attorney General may, in his discretion, permit an alien under deportation proceedings ... to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection.

Under this statute, the primary requirement for allowing voluntary departure is a showing of good moral character. In 8 U.S.C. § 1101(f), certain persons are regarded as incapable of being found as having good moral character. This statute provides that persons committing offenses for which they would be excludable under 8 U.S.C. § 1182(a)(9) lack good moral character.[5] Under 8 U.S.C. § 1182(a)(9), aliens are excludable "who have been convicted of a crime involving moral turpitude...."[6]

The IJ found that petitioner's convictions for false statements under 18 U.S.C. § 1001 and for obtaining a student loan by fraud under 20 U.S.C. § 1097(a) amounted to crimes of moral turpitude, and, therefore, petitioner was statutorily ineligible for being considered a person of good moral character. Yet, the IJ also found that regardless of statutory eligibility, petitioner should be denied voluntary departure as a matter of discretion:

> I would also find assuming *arguendo* that the respondent were not statutorily barred from voluntary departure that he has not demonstrated by weight of the evidence that he merits and is deserving of the discretionary relief of voluntary departure. Aside from the respondent's

**3.** 8 U.S.C. § 1251(a)(1) states:

Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who ...
(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry....

**4.** The INS also charged that petitioner was deportable under 8 U.S.C. § 1251(a)(2) as one entering the United States without inspection. The IJ rejected this charge.

**5.** It should be noted that the IJ based his conclusion as to petitioner's excludability on 8 U.S.C. § 1182(a)(20) as it applies to an immigrant seeking to enter the United States without proper documentation. Yet, the IJ also found that 8 U.S.C. § 1182(a)(9) would justify a finding of excludability for petitioner as one lacking good moral character. For purposes of this appeal, however, 8 U.S.C. § 1182(a)(9) is relevant only as it relates to the denial of voluntary departure under 8 U.S.C. § 1254(e). The finding of excludability is considered under 8 U.S.C. § 1182(a)(20).

**6.** In defining good moral character, the statute makes clear that while an alien may be statutorily eligible, that "shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f).

studies in the United States and having a family in this country there is nothing els [sic] that shows that he merits and is deserving of a favorable exercise of discretion. His record even viewed in the most favorable light to [him] indicates violations of his immigration status. As early as 1982 respondent completed his studies, but did not depart the United States. The record also indicates tht [sic] while [petitioner] understood that he was in violation of status he ... took steps to apparently evade detection and then change [sic] location from the Cincinnati, Ohio area to the El Paso, Texas area.

J.A. at 13a–14a. Thus, given the record as a whole, the IJ concluded petitioner did not qualify for voluntary departure.

Petitioner then appealed the IJ's decision to the Board. He argued that the IJ had made two errors: (1) that the IJ had erroneously determined that petitioner had "entered" the United States within the meaning of the Act, and (2) that the IJ had abused his discretion in failing to grant voluntary departure. The Board, by decision entered October 20, 1986, affirmed the IJ's decision, essentially adopting the IJ's reasoning. This timely appeal followed.

## II.

### A.

The Immigration and Nationality Act ("the Act") provides that a petition for review of a deportation order "shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive...." 8 U.S.C. § 1105a(a)(4). The decision which is reviewed is that of the Board rather than the IJ's. *Hernandez–Robledo v. INS*, 777 F.2d 536, 539 (9th Cir.1985).

In cases involving discretion, review is governed by the "much less demanding 'abuse of discretion' standard." *Wing Ding Chan v. INS*, 631 F.2d 978, 981 (D.C. Cir.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1371, 67 L.Ed.2d 349 (1981). The denial of the discretionary relief of voluntary departure is reviewable under the "abuse of discretion" standard.

'Abuse of discretion' is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

*Balani v. INS*, 669 F.2d 1157, 1160 (6th Cir.1982) (per curiam) (quoting *McBee v. Bomar*, 296 F.2d 235, 237 (6th Cir.1961)).

When reasonable, substantial, and probative evidence review is called for, as it is for factual determinations, we must analyze all factors in evidence relevant to the finding. *Luciano–Vincente v. INS*, 786 F.2d 706 (5th Cir.1986) (per curiam). Also, "courts may not determine the substantiality of the evidence by looking solely to evidence which supports a finding, but rather they 'must take into account whatever in the record fairly detracts from its weight.'" *Bastidas v. INS*, 609 F.2d 101, 104 (3d Cir.1979) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). Of course, where questions of law are involved, we review the Board's conclusions *de novo*. *Veneracion v. INS*, 791 F.2d 778, 780 (9th Cir.1986) (per curiam).

### B.

Petitioner argues that the Board's decision that he is deportable as one entering the United States without a valid entry document is not supported by reasonable, substantial, and probative evidence. He asserts that he cannot be considered as having effected an "entry" into the United States on May 8, 1984, as, in his view, he never departed this country. Petitioner contends his trips between Mexico and the United States were brief and casual and not truly interruptive of his presence in this country.

As stated earlier, one is deportable under 8 U.S.C. § 1251(a)(1) if excludable under 8 U.S.C. § 1182(a)(20) at time of entry into the United States. Three elements must be met under 8 U.S.C. § 1182(a)(20):

1. That the person be an immigrant,
2. who at the time of application for admission to the United States,
3. does not have a valid immigrant visa.

As to the requirement that the person be an "immigrant," the Act provides a rebuttable statutory presumption of intending immigrant status. 8 U.S.C. § 1184(b) ("Every alien shall be presumed to be an immigrant until he establishes ... that he is entitled to a nonimmigrant status under [8 U.S.C.] section 1101(a)(15)."). In the present case, however, petitioner does not dispute the conclusion that he was an intending immigrant. Regardless, we hold the statutory presumption was not rebutted. Petitioner also does not, and indeed could not, seriously contend that at the time of his application for admission (*viz.*, May 8, 1984) he had a valid entry document as an immigrant. As the Board noted, petitioner was admitted to the United States as a nonimmigrant student and thus has never had a valid immigrant visa. Yet, petitioner contends that his May 8, 1984, return to the United States from Ciudad Juarez did not constitute an "entry" as defined by 8 U.S.C. § 1101(a)(13). We disagree.

"Entry" under the Act is statutorily defined in 8 U.S.C. § 1101(a)(13), which provides:

> The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession

was *not intended or reasonably to be expected* by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided,* That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

(Emphasis supplied).

The exception provided for departures from the United States "not intended" to be departures was construed by the Supreme Court in *Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). There, the Supreme Court held that where a departure is not "meaningfully interruptive" of one's stay in the United States, no entry will be found upon return. *Id.* at 462, 83 S.Ct. at 1812. The Court stated:

> [W]e declare today simply that an innocent, casual, and brief excursion by a resident alien outside this country's border may not have been "intended" as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an "entry" into the country on his return.

*Id.* (quoting 8 U.S.C. § 1251(a)(1)).

In our view, the Board correctly found petitioner had "entered" the United States on May 8, 1984. The *Fleuti* case involved a resident alien who traveled to Mexico only for one afternoon and then re-entered. *Fleuti,* 374 U.S. at 450, 83 S.Ct. at 1806. In the present case, however, petitioner regularly traveled to Mexico to attend school over a period of approximately one year. The record reflects, and petitioner's counsel conceded at oral argument, that petitioner on a daily basis left the United States for Mexico, although traveling back to El Paso regularly. Consequently, we hold that petitioner's trips to Mexico were "meaningfully interruptive" of his stay in the United States, and thus he did enter the United States on May 8, 1984, under the definition of "entry." [7]

7. The Board also found that petitioner is not entitled to the benefit of the intent exception discussed above, as the exception only applies to

those "having a lawful permanent residence in the United States." 8 U.S.C. § 1101(a)(13). Since petitioner's student status in the United

**C.**

■ Petitioner objects to the Board's denial of the relief of voluntary departure. We conclude, however, petitioner is statutorily ineligible to be considered of good moral character because he has been convicted of crimes of moral turpitude.

As stated earlier, petitioner was convicted on September 10, 1984, of two counts of making false statements in violation of 18 U.S.C. § 1001 and one count of obtaining government funds by fraud and false statements in violation of 20 U.S.C. § 1097(a). A person is to be considered as lacking good moral character under the Act if "convicted of a crime involving moral turpitude." 8 U.S.C. § 1182(a)(9). Additionally, a person is to be considered as lacking good moral character if he has admitted "committing acts which constitute the essential elements" of a crime of moral turpitude. *Id.*

Petitioner first argues that his convictions under 18 U.S.C. § 1001 were not for crimes of moral turpitude.[8] He relies on *Hirsch v. INS*, 308 F.2d 562 (9th Cir.1962), wherein the Ninth Circuit held that a conviction for false statements is not necessarily a crime involving moral turpitude. *Id.* at 567. Yet, petitioner cites no cases in this circuit for the proposition that such a conviction may not be considered as involving moral turpitude. Under the facts of the present case, where petitioner has acknowledged his false statements and the statements made to defraud the United States Government, we find that the convictions may be considered as involving

moral turpitude for purposes of denying voluntary departure.[9]

■ Second, petitioner argues that because his convictions were not final at the time of the IJ's decision, they should not have been considered. In *Aguilera–Enriquez v. INS*, 516 F.2d 565 (6th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976), we adopted the majority rule that a nonfinal conviction is not a "conviction" within the meaning of 8 U.S.C. § 1182(a)(9) and may not be used to support a deportation order. A conviction is final for such purposes when "procedures for a direct appeal have been exhausted or waived." *Id.* at 570. *See also Marino v. INS*, 537 F.2d 686, 690–92 (2d Cir.1976).

■ Assuming the above applied with equal force when considering a conviction for purposes of denying the discretionary relief of voluntary departure, we nonetheless find any error which may have been committed was harmless. *See Bowe v. INS*, 597 F.2d 1158, 1159 (9th Cir.1979) ("[A]ny alleged errors ... could not have affected the outcome ... and thus were harmless."). In the present case, petitioner's conviction was still on appeal at the time of the IJ's decision. Yet, when the Board rendered its decision, the convictions were final.[10] *Cf. Quintanilla–Ticas v. INS*, 783 F.2d 955, 957 (9th Cir.1986) (A misapplication of proper standards to an alien's case by IJ is harmless where Board applies correct analysis.). Accordingly, any error which may be attributed to the IJ's examination of petitioner's convictions is

States was valid only so long as he was a student in the United States, *see supra* note 2, we agree that he was not, on May 8, 1984, a lawful permanent resident. Nonetheless, we give petitioner the benefit of the doubt and conclude the intent exception would not benefit him in any case.

**8.** At oral argument, petitioner's counsel conceded that the conviction under 20 U.S.C. § 1097(a) involved moral turpitude.

**9.** In affirming the false statements convictions, a prior panel of this court relied on the following language contained in a personal letter written by petitioner to the cosigner of the GSL:

The loan I got from Provident Bank is called Guaranteed Student Loan. It is a federal government loan. The terms of the loan are to be paid by monthly payments starting seven months after graduation from the Graduate Program, and having gotten the job in the field of study. So this is the loan that most American students get. Since I have lied. Please keep it to yourself. Don't worry about them coming to get you right away. It will be a while. Anyway, they only approved $2,500 as the guaranteed loan. J.A. at 18A.

**10.** The petition for writ of certiorari was denied on January 20, 1986. The Board found petitioner deportable on October 20, 1986.

harmless.[11]  Moreover, as earlier stated, it is the Board's decision which we review and not the decision of the IJ.  Hence, the Board properly found petitioner ineligible to be considered for voluntary departure, and we find it unnecessary to consider petitioner's final argument that such a finding is an abuse of discretion.

### III.

Accordingly, for the reasons stated, the decision of the Board is AFFIRMED.

**11.** The petitioner also asserts that an amendment to 8 U.S.C. § 1182(a)(9), effective November 1, 1987, requires this court to overlook his convictions and find him statutorily eligible to be considered of good moral character. *See* Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985). We conclude, however, that: (1) this exception, which allows the INS to overlook petty offenses, only applies as to findings of excludability in contrast to a denial of voluntary departure; (2) that the exception is discretionary only; and (3) that it applies where there is only one such conviction. Thus, we hold the petitioner is not entitled to the benefit of this exception.