THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOSE MIRANDA, Defendant-Appellee.

Second District   No. 2—87—0677

Opinion filed June 21, 1989.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Francine Harrison, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

The State appeals from a judgment of the circuit court of Lake County granting the post-conviction petition of defendant, Jose Miranda. We affirm.

Defendant was charged with attempt (murder) (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4, 9—1), aggravated battery (two counts) (Ill. Rev. Stat. 1983, ch. 38, par. 12—4), and armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2). Pursuant to a plea agreement, defendant pled guilty to one count of aggravated battery and the other charges were nol-prossed. On August 28, 1984, the circuit court sentenced defendant to a 30-month term of probation for aggravated battery.

Defendant filed a post-conviction petition (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*) on February 26, 1987. The petition alleged, *inter alia*:

"2. [T]hat at the time I entered the plea, I was represented by an attorney named Ronald Schwartz ***.

3. [T]hat Mr. Schwartz did not speak Spanish and I did not speak English; my mother tongue is Spanish.

4. [T]hat Mr. Schwartz and I communicated through the wife of one of my cousins, Maria Ortiz, who is Hispanic but speaks some English.

5. [T]hat I believe that Mr. Schwartz must have known that I was an immigrant from Latin America, because of my inability to communicate in English and the fact that I spoke only in Spanish.

6. [T]hat Mr. Schwartz never requested that an interpreter be appointed for me, pursuant to Ch. 38, Sec. 165—11, Ill. Rev. Stats.

7. [T]hat Mr. Schwartz never informed me that there could be adverse consequences with regard to the United States Immigration and Naturalization Service as a result of my plea of guilty.

8. [T]hat I have recently learned that I am eligible for Permanent Resident Status with the U.S. Immigration and Naturalization Service because I have resided in this country since before 1982, but for my record of a felony conviction in 1984.

9. [T]hat I recently learned that a felony conviction would automatically make me deportable even without the Immigration Reform Act of 1986.

10. [T]hat I believed and believe that I had a meritorious defense to the charges against me in 1984.

11. [T]hat had I understood the true nature of my plea in 1984, I would not have entered it.

12. [T]hat I believe that Mr. Schwartz rendered me ineffective assistance of counsel by not requesting an adequate interpreter and not informing me of the immigration consequences of my plea."

A hearing on this petition was held on June 25, 1987.

At the hearing, two witnesses testified: defendant and his former attorney, Ronald Schwartz. Defendant testified that he has been in the United States since 1977, having resided previously in Mexico. He was represented by Schwartz at the time he pled guilty and was sentenced. Defendant speaks only Spanish, understanding some expressions or phrases in English but being unable to speak that language. Schwartz speaks only English, and not Spanish, so they communicated through Maria Ortiz, the wife of a friend of defendant's. Prior to pleading guilty, defendant spoke with Schwartz twice in the jail: once for 20 or 30 minutes when defendant was still represented by the public defender and a second time for about half an hour after Schwartz took defendant's case. Defendant also spoke to Schwartz on the two occasions they were in court (*i.e.*, when he pled guilty and when he was sentenced). Neither Schwartz nor the judge nor the public defender ever told defendant anything about the effect of a guilty plea with regard to the immigration laws.

Schwartz testified that he visited defendant in jail on at least two and possibly three occasions and that he spoke with defendant on both occasions they were in court. Schwartz does not speak or understand any Spanish, so he communicated with defendant through an interpreter named Maria Ortiz. Schwartz believed defendant was from Mexico and believed him to be in this country illegally but did not discuss with defendant, investigate himself, or speak with any lawyer with a practice concentrated in immigration law about the immigration law ramifications of a guilty plea.

The trial court entered an order in which it found that defendant was an illegal alien at the time he pled guilty and that he and Schwartz had never discussed the effect of a felony conviction on his residency in this country. The court gave defendant leave to withdraw his guilty plea and reinstated all charges dismissed as a result of the guilty plea.

The State filed a "Motion to Vacate Order Allowing Defendant to Withdraw Plea" on July 10, 1987, which was denied on July 14, 1987.

The State filed a notice of appeal from the trial court's June 25 and July 14, 1987, orders on July 21, 1987.

The issue is whether defendant was denied his right to the effective assistance of counsel when his attorney, knowing that he was an alien in this country illegally, did not advise defendant as to, or even research, the effect of a guilty plea and conviction on his immigration status. The State contends that the judgment of the circuit court granting defendant's post-conviction petition should be reversed because "a defense attorney has no duty to *sua sponte* advise his client regarding the effect of a guilty plea upon his immigration status." Defendant contends that the judgment should be affirmed because "a criminal defense attorney has a duty to advise his client of all collateral consequences of a guilty plea, including the effect of a guilty plea and a conviction upon a defendant's immigrant status and the failure of counsel to so advise his client amounts to the ineffective assistance of counsel and renders the client's guilty plea involuntary." The circuit court did not err in finding that defendant had been denied his right to the effective assistance of counsel and so did not err in granting defendant's post-conviction petition.

■■ ■ To prevail on an ineffective-assistance-of-counsel claim, a defendant must establish (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068.) In the context of a guilty plea, the first part of the *Strickland* test is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " (*Hill v. Lockhart* (1985), 474 U.S. 52, 56, 58, 88 L. Ed. 2d 203, 208, 210, 106 S. Ct. 366, 369, 370, quoting *McMann v. Richardson* (1970), 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1449; see also *People v. Correa* (1985), 108 Ill. 2d 541, 549-50, 553, 485 N.E.2d 307, 310, 312 (Illinois Supreme Court, prior to *Hill v. Lockhart*, utilized *McMann v. Richardson* in applying the *Strickland* test to counsel's performance in the context of a guilty plea).) The second part of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process," which requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (*Hill v. Lockhart* (1985), 474 U.S. 52, 59, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366, 370; see also *People v. Correa* (1985), 108 Ill. 2d 541, 553, 485

N.E.2d 307, 312 (Illinois Supreme Court, prior to the opinion in *Hill v. Lockhart*, after determining that counsel's advice was not within the range of competence required of counsel in the situation at hand, focused on whether the defendant's decision to plead guilty had been affected by counsel's erroneous advice).) The State's claim of error—that the post-conviction petition should not have been granted because defense counsel had "no duty to *sua sponte* advise [defendant] regarding the effect of a guilty plea upon his immigration status"—goes only to the first or competence part of the ineffective-assistance-of-counsel test.

The Illinois Supreme Court has said:

"It is counsel's responsibility, and not the court's, to advise an accused of a collateral consequence of a plea of guilty; the consequence of deportation has been held to be collateral. [Citations.] * * *

Deportation, although collateral, is, nonetheless, a drastic consequence. [Citation.] In most cases this collateral consequence is more severe than the penalty imposed by the court in response to the plea." (*People v. Correa* (1985), 108 Ill. 2d 541, 550-51, 485 N.E.2d 307, 310-11.)

In *Correa*, counsel had misadvised the defendant as to the immigration consequences of a guilty plea, prompting the Supreme Court to say:

"We need not here consider the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea, because in our case we have unequivocal, erroneous, misleading representations that were made to defendant in response to his specific inquiry, the accuracy of which counsel could have ascertained before the pleas were entered." (*People v. Correa* (1985), 108 Ill. 2d 541, 551-52, 485 N.E.2d 307, 311.)

Although limited by the court in this way, *Correa* establishes several significant points: (1) defense counsel has the responsibility of advising a defendant of collateral consequences of a guilty plea in at least some circumstances; (2) immigration consequences—particularly deportation—may be drastic, often being harsher than the sentence itself; and (3) giving erroneous and misleading advice on deportation falls outside of the range of competence demanded of attorneys in criminal cases.

In *People v. Padilla* (1986), 151 Ill. App. 3d 297, 502 N.E.2d 1182, the defendant testified that "trial counsel incorrectly assured him that no deportation consequences would result from pleading

guilty" while his trial attorney testified that "the subject of deportation was never discussed with his client." (*People v. Padilla* (1986), 151 Ill. App. 3d 297, 301, 502 N.E.2d 1182, 1185.) The *Padilla* court noted:

> "The circuit court made no comment as to the credibility of the witnesses when denying the petition. In view of our disposition of this case, however, we need not further address this issue." (*People v. Padilla* (1986), 151 Ill. App. 3d 297, 301, 502 N.E.2d 1182, 1185.)

The court stated the disposition to which it referred as follows:

> "The overall trend in State courts favors finding ineffective assistance rendering a guilty plea involuntary where counsel knows his client is an alien and does nothing to inform him of possible deportation consequences. [Citation.] We are persuaded that this is the correct result under such circumstances. \*\*\*
>
> Accordingly, we hold \*\*\* that failure of an attorney to inform a client that a guilty plea may result in deportation, when that consideration may be material to the client's interest, constitutes ineffective assistance of counsel making the guilty plea involuntary." (*People v. Padilla* (1986), 151 Ill. App. 3d 297, 303, 502 N.E.2d 1182, 1186.)

Thus, where an attorney knows a client is an alien, *Padilla* establishes that the attorney's representation falls outside of the range of competence demanded of attorneys in criminal cases if the attorney fails to inform the client of the possibility of deportation when that may be material to the client's interests.

In the case at bar, the trial court granted defendant's post-conviction petition in reliance upon *Padilla*. The State argues that this reliance on *Padilla* was erroneous for several reasons.

The State argues that *Padilla* is factually distinguishable from the case at bar because:

> "In *Padilla*, the defendant twice specifically raised deportation questions with his trial counsel. Therefore, it was obvious that the subject of Padilla's immigration status was of paramount importance to him. Here, to the contrary, Miranda never exhibited any interest in his potential for deportation."

The State has ignored Padilla's attorney's testimony that deportation was never discussed, the *Padilla* court's statement that the circuit court never resolved the credibility question presented, and the *Padilla* court's conclusion that it did not matter whether the subject was raised by Padilla because he was entitled to relief even if it was not. *People v. Padilla* (1986), 151 Ill. App. 3d 297, 301-03, 502 N.E.2d

1182, 1185-86.

The State also in effect contends that we should not follow *Padilla* because it was wrongly decided. We disagree and decline the State's invitation to adopt the position taken in the cases decided contrary to the holding in *Padilla*. (See *People v. Padilla* (1986), 151 Ill. App. 3d 297, 303, 502 N.E.2d 1182, 1186 (and cases cited therein).) We also decline to follow *United States v. George* (7th Cir. 1989), 869 F.2d 333. We note that *George* is premised upon a holding that the sixth amendment's assurance of the effective assistance of counsel does not extend to collateral aspects of the prosecution. Even if we thought *Padilla* wrong we could not follow the rationale of *George* since our supreme court has held that "[i]t is counsel's responsibility *** to advise an accused of a collateral consequence of a plea of guilty." (*People v. Correa* (1985), 108 Ill. 2d 541, 550, 485 N.E.2d 307, 310; see *People v. Richardson* (1985), 139 Ill. App. 3d 598, 600, 487 N.E.2d 716, 717 (when the Illinois Supreme Court has decided an issue, the appellate court lacks the power to decide the same issue in a contrary fashion); *People v. Nurse* (1985), 131 Ill. App. 3d 590, 594, 475 N.E.2d 1000, 1004 ("It is well settled that the appellate court may not overrule or modify decisions of the supreme court. [Citations.] It is beyond this court's power as an intermediate court of review to allow defendants' argument to prevail when direct supreme court authority to the contrary exists").) The State contends that, because under *People v. Thomas* (1968), 41 Ill. 2d 122, 242 N.E.2d 177, a trial court need not tell an alien defendant when pleading guilty that he may become subject to deportation, counsel need not tell such a defendant either. Despite the State's protestation that if the trial judge does not have such a duty, "then it is only common sense that a defense attorney also does not have such a duty," it is clear that a trial judge's duty to advise a defendant pleading guilty is not identical to defense counsel's. The Illinois Supreme Court recognized this and stated, "[i]t is counsel's responsibility, and not the court's, to advise an accused of a collateral consequence of a plea of guilty; the consequence of deportation has been held to be collateral." *People v. Correa* (1985), 108 Ill. 2d 541, 550, 485 N.E.2d 307, 310.

The State, citing *Allen v. Hardy* (1986), 478 U.S. 255, 92 L. Ed. 2d 199, 106 S. Ct. 2878, and *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, argues that *Padilla* should not be applied retroactively. However, *Padilla* did not announce a rule of criminal procedure that was a clear break with the past but, rather, "did nothing more than apply settled precedent to different factual situations," making retroactive application appropriate. *Griffith v.*

*Kentucky* (1987), 479 U.S. 314, 324, 93 L. Ed. 2d 649, 659, 107 S. Ct. 708, 714.

The State in its reply brief argues that the case at bar is distinguishable from *Padilla* because defendant is an illegal alien and so not subject to the loss of legal resident alien status and that any adverse effects resulting from a conviction for defendant are based on conjecture or speculation too tenuous to justify requiring defense counsel to inform him of them. This argument was raised in the trial court but was not raised in the State's initial brief in this court. This contention is not properly before us. (*People v. Calhoun* (1970), 46 Ill. 2d 60, 63, 263 N.E.2d 69, 71.) Even if it were properly before us, it would not alter the result of this case.

■■ It is not necessary that a bad collateral consequence be a certitude for it to be one defense counsel should discuss with defendant before a guilty plea. Rather, it is only necessary that the consequence may be material to the client's interests. (*People v. Padilla* (1986), 151 Ill. App. 3d 297, 303, 502 N.E.2d 1182, 1186.) A consequence is material if, under all of the circumstances, including both the severity and the likelihood of the particular consequence, it is one that may affect a client's decision to plead guilty. The immigration consequences of the guilty plea to defendant at bar were of such magnitude.

Immigration consequences to an illegal alien may be very serious. An alien who has been convicted of a crime of moral turpitude is excludable. (8 U.S.C.A §1182(a)(9) (West Supp. 1989).) An alien may reapply for admission into the United States if he has been deported on the basis of illegal entry, since that does not sustain a finding that the applicant is a person of bad moral character. (*In re Carbajal* (IC Oct. 26, 1978), Interim Decision No. 2765, at 279.) The Board of Immigration Appeals (BIA) has held that aggravated assault is a crime of moral turpitude. (*In re Medina* (BIA March 19, 1976), Interim Decision No. 2481, at 612; see also *In re Lopez-Lopez* (BIA Aug. 27, 1985), 2 ICR Bl-208, 212 (Vacca, board member, dissenting).) Thus, if defendant were deported after this conviction, he could not apply for admission into the United States since he would be excludable. Consequently, defendant has been harmed by pleading guilty.

In addition, by pleading guilty to a crime of moral turpitude, defendant is ineligible for discretionary relief from deportation. The Attorney General may, in his discretion, grant voluntary departure in lieu of deportation. (8 U.S.C.A. §1254(e) (West Supp. 1989).) "An alien who is granted voluntary departure avoids the stigma of deportation and is allowed to choose his destination. Furthermore, future reentry into the United States is considerably easier for an alien who has de-

parted voluntarily than for one who has been expelled." (*Jain v. Immigration & Naturalization Service* (2d Cir. 1979), 612 F.2d 683, 686 n.1.) To qualify for voluntary departure, the alien must establish that he or she is a person of good moral character for at least five years prior to the application for voluntary departure. (8 U.S.C.A. §1254(e) (West Supp. 1989); *Delgado-Chavez v. Immigration & Naturalization Service* (9th Cir. 1985), 765 F.2d 868, 869.) An alien is statutorily ineligible to be considered of good moral character if he or she has been convicted of a crime of moral turpitude. (*Kabongo v. Immigration & Naturalization Service* (6th Cir. 1988), 837 F.2d 753, 758.) Thus, defendant could not be granted voluntary departure if he had a conviction of a crime of moral turpitude, but would be eligible for such relief if he was not convicted.

Other forms of relief denied to aliens who have been convicted of crimes of moral turpitude and/or particularly serious crimes are suspension of deportation (8 U.S.C.A. §1254(a) (West Supp. 1989)), withholding of deportation (8 U.S.C.A. §1253(h)(2)(B) (West Supp. 1989)), waiver of deportation (8 U.S.C.A. §1182(c) (West 1970)), and waiver of excludability (8 U.S.C.A. §1182(h) (West Supp. 1989)). Since the record is devoid of facts regarding defendant's immigration history, we will not speculate as to whether he would be eligible for any of these forms of relief.

■ These immigration consequences were sufficiently likely to affect defendant's decision to plead guilty that counsel, knowing defendant was an illegal alien, should have advised defendant of them. Counsel's failure to do so resulted in his advice falling outside of the range of competence demanded of attorneys in criminal cases. Since the State does not contend that defendant failed to establish prejudice, this conclusion is sufficient to uphold the judgment of the circuit court.

The judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT, P.J., and REINHARD, J., concur.