THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOSE HUANTE, Defendant-Appellant.

First District (2nd Division)   No. 1—88—2650

Opinion filed January 23, 1990.

Stephen M. Connolly, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Jane E. Loeb, and Nicholas Ford, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant, Jose Huante, was arrested on November 13, 1985, after he had made three separate sales of cocaine to a Chicago police officer. Although the quantity of narcotics involved in this case made defendant eligible to be sentenced as a Class X felon, plea negotiations between defense counsel and the State led to the reduction of one of the charges to a Class 3, and defendant then pleaded guilty to three counts of delivery of a controlled substance. Defendant was sentenced to concurrent three-year terms of imprisonment on each plea, plus a one-year period of mandatory supervised release thereafter. Defendant did not appeal his conviction or file a motion to vacate the judgment and for leave to withdraw his pleas of guilty. On May 26, 1988, he filed a petition seeking relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*), alleging ineffective assistance of counsel on the ground that his attorney failed to inform or discuss with him that deportation could be a collateral consequence of his pleading guilty in light of his status as an alien and that his plea of guilty was therefore rendered involuntary. Following a hearing, the trial court denied defendant's post-conviction petition. He now appeals from that decision.

Upon receiving defendant's guilty pleas, the trial judge admonished defendant as to the constitutional rights he was waiving thereby, and then entered judgment on each conviction. Nothing was entered in aggravation or mitigation; instead, both sides relied on their statements made in a pretrial conference. Although the trial judge did not ask defendant if defense counsel had said or done anything to influence his decision to plead guilty, defendant did tell the trial judge that no one had promised him anything or threatened him in any manner that would influence his decision.

At the evidentiary hearing held on defendant's post-conviction petition, attorney Michael D. Walsh, who represented defendant in his criminal proceeding, was asked by his present counsel, "[Y]ou were aware that if he was Mexican and he did speak Spanish he could be

an alien. Is that correct?" And Walsh replied, "Anything's possible." Walsh also stated that he was cognizant that "certain convictions could result in deportation," and that he had advised other clients that their status as aliens could be affected if they were convicted of a crime, but that he had never discussed the subject with defendant because he had not been informed nor had he been aware of defendant's status in this country.

Defendant testified in his own behalf that he and Walsh had never discussed the consequences of a guilty plea upon his status as an alien and that he was unaware that he "could have problems with the Immigration and Naturalization Service" (INS) as a result of such a plea. Defendant further stated that he would not have pleaded guilty if he had known of the consequences, and that he did not learn of any involvement in his case by the INS until he was released from prison and discovered that the immigration authorities had lodged a detainer against him. Although defendant had entered the United States illegally in 1973, he was a legal resident and the holder of a "green card" at the time that Walsh represented him. Defendant agreed with Walsh's testimony that they had never discussed his status in the United States and that he had never informed Walsh of his status or of the fact that he was born in Mexico.

Present counsel for defendant cited two cases in support of the granting of defendant's petition: *People v. Correa* (1985), 108 Ill. 2d 541, 485 N.E.2d 307, and *People v. Padilla* (1986), 151 Ill. App. 3d 297, 502 N.E.2d 1182. After he had heard oral argument and had taken the matter under advisement, the trial judge denied the petition, stating that in both *Correa* and *Padilla* "the attorney was ineffective because he misrepresented the law," whereas "in the case I have before me *** there was no misrepresentation of the law," and that both defendant and Walsh testified that defendant's status in the United States "was never discussed," that defendant "never asked about it," and "never told the attorney."

■ A guilty plea is valid only when it is made as "a voluntary and intelligent choice among the alternative courses of action open to the defendant." (*North Carolina v. Alford* (1970), 400 U.S. 25, 31, 27 L. Ed. 2d 162, 168, 91 S. Ct. 160, 164.) When a defendant enters a plea of guilty upon advice of counsel, the voluntariness and intelligence of the plea depends "on whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson* (1970), 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1448-49.

■ To determine "whether the defendant's pleas, made in reli-

ance on counsel's advice, were voluntary and intelligently and knowingly made depends on whether the defendant had effective assistance of counsel." *(People v. Correa* (1985), 108 Ill. 2d 541, 549, 485 N.E.2d 307, 310.) The United States Supreme Court has adopted a two-part test for this determination. First, the defendant must demonstrate that his "counsel's representation fell below an objective standard of reasonableness" *(Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064), and second that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *(Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068). Our supreme court has expressly adopted the two-component test of *Strickland. (People v. Albanese* (1984), 104 Ill. 2d 504, 526-27, 473 N.E.2d 1246, 1255-56.) The second prong of the *Strickland* test can be satisfied by a showing that but for counsel's unprofessional conduct, defendant would not have pleaded guilty but would have insisted upon going to trial, *i.e.,* that defense counsel's conduct affected the outcome of the plea process. *Hill v. Lockhart* (1985), 474 U.S. 52, 88 L. Ed. 2d 203, 106 S. Ct. 366.

On appeal, defendant reasserts his reliance upon *Correa* and *Padilla.* (See also *People v. Miranda* (1989), 184 Ill. App. 3d 718, 540 N.E.2d 1008 (decided by the second district after the briefs in this case were filed).) But the State argues that here we are presented with an issue which did not arise in *Correa* or *Padilla,* for it is clear that although in each of those cases trial counsel had knowledge of the fact that their clients were aliens, they did not inform them of, or look into, the effect of a guilty plea and conviction on their alienage. Indeed, in *Correa,* the defendant asked his attorney what effect his guilty pleas would have on his status as an alien, and the attorney replied that although he did not know the answer to that question, "In my experience, I represent a lot of people who have been aliens, and none of them have been deported." *(Correa,* 108 Ill. 2d at 547, 485 N.E.2d at 309.) And when the defendant informed the attorney that his wife was an American citizen, the attorney erroneously told him, "If your wife is an American citizen, then a plea of guilty would not affect your status. You probably will be picking up her status as an American citizen." *Correa,* 108 Ill. 2d at 548, 485 N.E.2d at 309.

In *Padilla,* trial counsel "by his own admissions, knew defendant was an alien, knew drug convictions could cause deportation, and took no action to inform his client before the guilty plea." *(Padilla,* 151 Ill. App. 3d at 303, 502 N.E.2d at 1186.) In *Miranda,* the issue, as stated by the court, was "whether defendant was denied his right to the ef-

fective assistance of counsel when his attorney, knowing that he was an alien in this country illegally, did not advise defendant as to, or even research the effect of a guilty plea and conviction on his immigration status," and the question was answered in the affirmative. *Miranda*, 184 Ill. App. 3d at 722, 549 N.E.2d at 1010.

In the case at bar, the parties are in accord that defendant's alien status was never discussed by Walsh with defendant prior to the entry of his pleas; defendant did not inform Walsh of it and Walsh did not inquire of his client. Nor did defendant inform Walsh that he was born in Mexico. The record also shows that present counsel for defendant stated to the judge at the post-conviction hearing that "my client speaks fairly good English." Nevertheless, counsel obtained permission from the court to have defendant's sister stand by at the hearing in the event she was needed to interpret for him; however, there was apparently no need for her services despite the fact that the questions asked of defendant by his attorney were replete with references to legal terms not commonly understood by laymen. Defendant appears to have answered those questions coherently and without any hesitation. It is also of record that defendant had been in the United States for 13 years at the time he pleaded guilty in his criminal case, that he was then a self-employed general contractor, that he had married in Chicago and was the father of two children, ages seven and five at the time, and that, according to the presentence investigation report, he was born in Mexico. Evidently, Walsh had occasion to use defendant's sister and sister-in-law to interpret some of his conversations with defendant prior to the entering of his pleas. Accordingly, the issue resolves itself into one of whether Walsh either knew or should have known that defendant was an alien who, under the circumstances, was susceptible to deportation.

In determining whether Walsh's representation of defendant "fell below an objective standard of reasonableness," an examination of the relevant law is necessary:

> "Any alien in the United States *** shall, upon the order of the Attorney General, be deported, who—
>
> * * *
>
> (11) is, or hereafter at any time after entry has been, *** convicted of a violation of, *** any law or regulation of a State, *** relating to a controlled substance [as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)]." 8 U.S.C. 1251(a)(11) (1988).

Defendant, although a legal resident of the United States, is deemed an "alien" because he is neither a citizen nor a national of

this country. 8 U.S.C. 1101(a)(3) (1988).

Deportation, although collateral, is, nevertheless, a drastic consequence. (*Fong Haw Tan v. Phelan* (1948), 333 U.S. 6, 92 L. Ed. 433, 68 S. Ct. 374; *Correa*, 108 Ill. 2d 541, 485 N.E.2d 307.) In most cases this collateral consequence is more severe than the penalty imposed by the court in response to the plea. (*Correa*, 108 Ill. 2d at 550-51, 485 N.E.2d at 311.) Indeed, deportation has been equated with a "life sentence of exile" (*Jordan v. De Gorge* (1951), 341 U.S. 223, 243, 95 L. Ed. 886, 898, 71 S. Ct. 703, 714, (Jackson, J., dissenting); accord *Fong Haw Tan v. Phelan* (1948), 333 U.S. 6, 10, 92 L. Ed. 433, 436, 68 S. Ct. 374, 376 ("the equivalent of banishment"); *Ng Fung Ho v. White* (1922), 259 U.S. 276, 284, 66 L. Ed. 938, 943, 42 S. Ct. 492, 495 (may result in the "loss of both property and life; or of all that makes life worth living")). And in *United States ex rel. Klonis v. Davis* (2d Cir. 1926), 13 F.2d 630, 631, Judge Learned Hand referred to deportation as "a cruel and barbarous result [which] would be a national reproach."

The harsh consequences of deportation may be averted, however, if the trial judge having jurisdiction over the alien defendant recommends to the Attorney General, at the time of first imposing judgment or passing sentence or within 30 days thereafter, that the defendant not be deported. (8 U.S.C. 1251(b) (1988).) And "while section 1251(b) speaks in terms of the sentencing court's making a 'recommendation,' it is a recommendation that is binding on the Attorney General, for the section has consistently been interpreted as giving the sentencing judge conclusive authority to decide whether a particular conviction should be disregarded as a basis for deportation." *Janvier v. United States* (2d Cir. 1986), 793 F.2d 449, 452, citing *Haller v. Esperdy* (2d Cir. 1968), 397 F.2d 211, 213; *Velez-Lozano v. Immigration & Naturalization Service* (D.C. Cir. 1972), 463 F.2d 1305, 1308; *United States ex rel. Santarelli v. Hughes* (3d Cir. 1940), 116 F.2d 613, 616.

■ In view of these factors, our courts have concluded that the potential deportation consequences of guilty pleas in criminal proceedings brought against alien defendants are material to the critical phases of such proceedings (*Correa*, 108 Ill. 2d 541, 485 N.E.2d 307; *Miranda*, 184 Ill. App. 3d 718, 540 N.E.2d 1008; *Padilla*, 151 Ill. App. 3d 297, 502 N.E.2d 1182); and the determination of whether the failure to investigate those consequences constitutes ineffective assistance of counsel turns to a significant degree upon whether the attorney had sufficient information to form a reasonable belief that the client was in fact an alien. (*People v. Pozo* (Colo. 1987), 746 P.2d 523.) In

the case at bar, although it is true that present counsel for defendant admitted that his client "speaks fairly good English"; that no interpreter was needed at the post-conviction hearing (the record does not show whether one was utilized in the criminal case); that defendant had no difficulty in responding to his counsel's interrogation, however laden the questions may have been with legal terms; that defendant had been in the United States for 13 years at the time he entered the pleas at issue here; and that he was then a self-employed general contractor, it is also true that Walsh had on some occasions used defendant's sister and sister-in-law to interpret his conversations with him; that the presentence investigation report shows that defendant was born in Mexico; and that Walsh, in response to the query put to him at the post-conviction hearing, "You were aware that if he was Mexican and he did speak Spanish he could be an alien," replied, "Anything's possible." Walsh also stated that he was aware that "certain convictions could result in deportation," and that he had advised other clients that their status as aliens could be affected if they were convicted of a criminal offense.

Our supreme court has held that it is counsel's and not the court's responsibility to advise an accused of the collateral consequences of a plea of guilty (*Correa*, 108 Ill. 2d at 550, 485 N.E.2d at 310), and although *Correa* treats the issue of an attorney who admits knowing of his client's alienage and misleads him, which is also the case with *Padilla* and *Miranda*, and although the *Correa* court expressly stated that it was not ruling upon the merely passive conduct of counsel,[1] the case at bar commands no different a result than the one reached there or in *Padilla* or in *Miranda*. Here, from all of the facts known to him at the time that his client pleaded guilty, Walsh evidently chose to guess that defendant was an American national, for that is the only reasonable characterization we can give it—a guess. And therein Walsh erred, for to guess without ascertaining the accuracy of his conclusion was to choose to remain ignorant. No matter: either to err or to be ignorant of so vital a fact under the circumstances of this case is to fail the first element of the *Strickland* test—"counsel's representation fell below an objective standard of reasonableness." (*Strickland*, 466 U.S. at 668, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) This is so especially because defense counsel had a duty "to ascertain the personal circumstances of his client so as to

---

[1]The supreme court did, however, cite cases from three different States which held that even passive conduct of counsel may constitute ineffective assistance. *Correa*, 108 Ill. 2d at 551.

determine what indirect consequences the guilty plea may trigger." (*Michel v. United States* (2d Cir. 1974), 507 F.2d 461, 466; accord *Commonwealth v. Wellington* (Pa. Super. 1982), 305 Pa. Supp. 24, 451 A.2d 223.) Nor can there be any doubt that Walsh's conduct affected the outcome of the plea process, thus completing the *Strickland* requirement.

Accordingly, we reverse the judgment of the circuit court and remand with directions to vacate defendant's guilty pleas and to grant him a new trial.

Reversed and remanded.

HARTMAN, J., concurs.

PRESIDING JUSTICE DiVITO, dissenting:

In my judgment, neither *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, nor Illinois case law compels the conclusion reached by the majority. I do not believe the lawyer's conduct in this case fell below the objectively reasonable standard of professional conduct required by the sixth amendment, and I do not believe either *People v. Correa* (1985), 108 Ill. 2d 541, 485 N.E.2d 307, or *People v. Padilla* (1986), 151 Ill. App. 3d 297, 502 N.E.2d 1182, applies where, as in this case, the lawyer is unaware of his client's alien status.

There is no doubt that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. (See *Hill v. Lockhart* (1985), 474 U.S. 52, 88 L. Ed. 2d 203, 106 S. Ct. 366.) The first part of the *Strickland* test applied to such challenges is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " (*Hill v. Lockhart*, 474 U.S. at 56, 88 L. Ed. 2d at 208, 106 S. Ct. at 369, quoting *McMann v. Richardson* (1970), 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1449.) Concerning the deportation consequences of a guilty plea, the Illinois Supreme Court has stated that "unequivocal, erroneous, misleading representations *** made to [the] defendant in response to his specific inquiry" fall outside the range of competence demanded by *Strickland* and the sixth amendment, but expressly declined to consider whether the same is true of "the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea." *People v. Correa*, 108 Ill. 2d at 551-52.

Application of the rule in *Correa* to "passive conduct" was first considered in *People v. Padilla* (1986), 151 Ill. App. 3d 297, 502

N.E.2d 1182. In that case, the defendant challenged his guilty plea in a post-conviction hearing, alleging that his lawyer incorrectly assured him that no deportation consequences would result from pleading guilty. His lawyer denied that he had discussed the subject of deportation with his client. The trial court did not resolve this conflict in the evidence, and the court on appeal did not find the lawyer's denial relevant, holding that "ineffective assistance render[s] a guilty plea involuntary where counsel knows his client is an alien and does nothing to inform him of possible deportation consequences." (*People v. Padilla*, 151 Ill. App. 3d at 303.) In *People v. Miranda* (1989), 184 Ill. App. 3d 718, 540 N.E.2d 1008, the court agreed that a lawyer who knows his client is an alien, but does not inform him of the deportation consequences of a guilty plea, provides constitutionally ineffective assistance, even where the client never raised the subject of deportation with his lawyer.

Because the lawyer in *Correa* actually misrepresented to his client the deportation consequences of a guilty plea, both *Padilla* and *Miranda* represent an extension of the result reached in that case. The majority here would now extend *Correa* further by finding ineffective assistance even though the lawyer does not know his client is an alien. I do not believe, however, that a lawyer's conduct is outside the range of reasonable competence where the lawyer, who does not know his client is an alien, fails to advise him of the deportation consequences of a guilty plea. Such a result would impose on defense lawyers a duty, not mandated by the constitution, required by statute, or compelled by *Correa, Padilla,* or *Miranda,* to inquire into their clients' alien status. Indeed, if such inquiries are constitutionally required, then the duty should be imposed on the court as well as counsel to advise a defendant of the deportation consequences of a guilty plea, regardless of whether the defendant is known to be an alien. Although this might be a simple procedure to follow, I am not aware of any authority compelling such a practice.

If there are circumstances under which a lawyer could be charged with the knowledge that his client is an alien, such circumstances were certainly not present in this case. Defendant never discussed his alien status with his lawyer, had been in the United States for 13 years, was married in Chicago, had two children, was self-employed as a general contractor, and spoke "fairly good" English. The only facts cited by the majority remotely indicative of defendant's alien status and presumably known to defendant's lawyer are the entry in the presentence investigation report showing defendant was born in Mexico and the use of defendant's sister and sister-in-law as inter-

preters. On these facts, I simply do not believe defendant received constitutionally ineffective assistance because his lawyer failed to inform him of the deportation consequences of a guilty plea.

For the foregoing reasons, I would affirm the judgment of the circuit court.