THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRAHIM BOUZIDI, Defendant-Appellant.

First District (3rd Division)   No. 1—00—2087

Opinion filed June 28, 2002.

Anthony M. Petrone, of Law Offices of Anthony M. Petrone, P.C., of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Linda D. Woloshin, and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HALL delivered the opinion of the court:

The defendant, Brahim Bouzidi, appeals from the granting of the State's motion to dismiss his petition for postconviction relief. We affirm the decision of the circuit court.

On September 3, 1999, the defendant, who was represented by counsel, filed a petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 et seq. (West 1998)). In his petition, the defendant alleged that he had been convicted of domestic battery and of violating an order of protection, based upon his plea of guilty to those charges, for which he had been sentenced to concurrent periods of conditional discharge, subject to several conditions. He further alleged that he was denied his constitutional right to the effective assistance of counsel because his attorney failed to advise him that a guilty plea would have an adverse effect on his immigration status.

In his affidavit in support of his petition, the defendant averred as follows.

Following his arrest for domestic battery, the defendant had retained attorney Frank Davenport to represent him. The defendant specifically informed Mr. Davenport:

"[the defendant was] in the process of applying to the Immigration and Naturalization Service (INS) for his 'green card';

he was born in Morocco;

he arrived in the United States in approximately 1993;

his wife was born in the United States;

his INS 'green card' application was based on his marriage;

it might 'be bad' for his INS application if he lost the criminal case, but he did not know exactly what effect the criminal case would have on his immigration status and/or his pending application for immigration benefits.''

Despite this information, Mr. Davenport never questioned the defendant regarding his immigration status or requested any immigration documentation from the defendant. Mr. Davenport did not give the defendant any advice regarding his immigration status or about the effect a guilty plea would have on his immigration status or application for immigration benefits.

After appearing with the defendant on the first court date, Mr. Davenport advised the defendant that his case was being transferred to attorney Terry D. Slaw. However, the defendant was unable to keep his scheduled appointment with Mr. Slaw on January 4, 1999, because of his arrest for violating the order of protection.

On January 5, 1999, the defendant's next court date, Mr. Slaw met with the defendant, who was in custody. Mr. Slaw did not discuss the defendant's immigration status or give the defendant any immigration advice.[1] On that date, the defendant entered a plea of guilty to domestic battery and to violating the order of protection, and he was sentenced to conditional discharge.

Subsequently, the defendant consulted with an immigration attorney and was advised that, based on his plea of guilty to the charges in this case, his application for immigration benefits could be denied, and he could be deported.

Finally, the defendant averred that he would not have pleaded guilty if he had been advised of the adverse consequences to his immigration status and application for benefits.

On September 14, 1999, the State filed a motion to transfer and dismiss the defendant's postconviction petition. On January 6, 2000, after the State amended its motion, the circuit court denied the motion to dismiss and set the matter for an evidentiary hearing. On March 22, 2000, the circuit court ordered the State to file a response to the defendant's petition.

On April 7, 2000, the State again moved to dismiss the petition,

---

[1]According to the defendant's postconviction petition, in addition to his own affidavit, the affidavit of attorney Terry D. Slaw was attached to the petition. However, Mr. Slaw's affidavit was not then listed as an attachment to the postconviction petition, and it does not appear in the record on appeal.

alleging that the defendant had failed to allege sufficient grounds for either an evidentiary hearing or for relief under the Act.

On May 26, 2000, the circuit court heard arguments on both the State's motion to dismiss and the defendant's postconviction petition. The circuit court granted the State's motion to dismiss, but noted that it had addressed the merits of the postconviction petition as well.

The defendant filed a timely notice of appeal.

The sole issue on appeal is whether the trial court erred in dismissing the defendant's petition for postconviction relief.

## Analysis

### I. Determination of the Stage of the Proceedings

■ The Act provides a mechanism by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Coleman*, 183 Ill. 2d 366, 378-79, 701 N.E.2d 1063, 1070-71 (1998); 725 ILCS 5/122—1 (West 1998). The Act establishes a three-stage process for adjudicating a petition for postconviction relief. *People v. Smith*, 326 Ill. App. 3d 831, 839, 761 N.E.2d 306, 315 (2001). At the first stage of the proceedings and where the defendant has been sentenced to a term of imprisonment, the circuit court must determine, within 90 days of the filing and docketing of the petition and without any responsive pleading by the State, whether the petition is frivolous or is patently without merit. See *Coleman*, 183 Ill. 2d at 379, 701 N.E.2d at 1071; 725 ILCS 5/122—2.1(a)(2) (West 1998).

If the petition is not dismissed, it moves to the second stage, where the court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Smith*, 326 Ill. App. 3d at 856, 761 N.E.2d at 327. At the second stage, the State may choose to answer the petition or move to dismiss it. 725 ILCS 5/122—5 (West 1998). If a substantial showing is made, then the petition advances to the third stage, where the circuit court conducts an evidentiary hearing. *Smith*, 326 Ill. App. 3d at 856, 761 N.E.2d at 327.

■ The circuit court's January 6, 2000, and March 22, 2000, orders, which set the case for an evidentiary hearing and ordered the State to file a "response," presumably advanced the case to the third stage.[2] However, instead of filing an answer to the petition, the State filed

[2]Although the March 22, 2000, order refers to the State filing a "response," the order further provided that the defendant "shall file a response to the People's Answer, if he chooses to do so."

another motion to dismiss. While the circuit court considered that the May 26, 2000, hearing was on both the State's motion to dismiss and merits of the defendant's petition, it was clearly not an evidentiary hearing. The parties presented argument, but no witnesses testified and no evidence was presented. However, the defendant did not object to proceeding on the State's motion to dismiss and did not argue that the January 6, 2000, order entitled him to an evidentiary hearing. See *People v. Wren*, 223 Ill. App. 3d 722, 729, 585 N.E.2d 1216, 1221 (1992) (reviewing court was disinclined to say that the circuit court erred in dismissing the defendant's petition without an evidentiary hearing, where the defendant voluntarily waived the opportunity to have such a hearing conducted).

Therefore, we will apply the rules applicable to the second stage of a postconviction proceeding.

## II. Standard of Review

■ The standard of review applicable to both the first and second stages of a postconviction proceeding is *de novo*. See *Coleman*, 183 Ill. 2d at 388, 701 N.E.2d at 1075 ("Due to the elimination of all factual issues at the dismissal stage of a post-conviction proceeding, the question is, essentially, a legal one, which requires the reviewing court to make its own independent assessment of the allegations").

## III. Discussion

■ A defendant is not entitled to an evidentiary hearing unless the allegations set forth in the petition, as supported by the trial record or accompanying affidavits, make a substantial showing of a constitutional violation. *People v. West*, 187 Ill. 2d 418, 425, 719 N.E.2d 664, 670 (1999). In making that determination, all well-pleaded facts in the petition and affidavits are to be taken as true, but nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act. *West*, 187 Ill. 2d at 425-26, 719 N.E.2d at 670. The dismissal of a postconviction petition is warranted only when the petition's allegations of fact, which are to be liberally construed in favor of the petitioner and in light of the original trial record, fail to make a substantial showing of a constitutional violation. *West*, 187 Ill. 2d at 426, 719 N.E.2d at 670.

■ Ineffective assistance of counsel claims are judged under the now familiar standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *Coleman*, 183 Ill. 3d at 397, 701 N.E.2d at 1079. To show that he was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that defendant suffered prejudice as a result. *People v. Huante*, 143 Ill.

2d 61, 67-68, 571 N.E.2d 736, 739 (1991); *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

The court's first inquiry under *Strickland* is whether counsel's performance was deficient, that is, whether it " 'fell below an objective standard of reasonableness.' " *Huante*, 143 Ill. 2d at 68, 571 N.E.2d at 740, quoting *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. In cases involving guilty pleas, the standard for reasonableness " 'depends *** not on whether a court would retrospectively consider counsel's advice to be right or wrong, but whether that advice was within the range of competence demanded of attorneys in criminal cases.' " *Huante*, 143 Ill. 2d at 68-69, 571 N.E.2d at 740, quoting *McMann v. Richardson*, 397 U.S. 759, 770-71, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1448-49 (1970); see also *People v. Correa*, 108 Ill. 2d 541, 549, 485 N.E.2d 307, 310 (1985).

In *People v. Huante*, the defendant alleged that he had received ineffective assistance of counsel because his defense counsel failed to advise him that his plea of guilty to drug charges would result in his deportation.[3] Following an evidentiary hearing, the circuit court denied his postconviction petition, but the appellate court reversed, finding that since defense counsel knew or should have known that the defendant was an alien, the attorney's failure to warn the defendant of the possible deportation consequences of his convictions constituted ineffective assistance of counsel. Our supreme court reversed the appellate court and upheld the circuit court's denial of postconviction relief to the defendant.

The supreme court determined that a defendant's awareness of collateral consequences, such as deportation, was not a prerequisite to the entry of a knowing and voluntary plea of guilty. *Huante*, 143 Ill. 2d at 71, 571 N.E.2d at 741. Therefore, defense counsel's failure to advise the defendant of the collateral consequences of his guilty plea did not render his performance deficient under the first prong of the *Strickland* test, which disposed of the defendant's claim that his plea should be vacated. *Huante*, 143 Ill. 2d at 72, 571 N.E.2d at 741; see *Coleman*, 183 Ill. 2d at 397, 701 N.E.2d at 1079 (both prongs of the *Strickland*

---

[3]In *Huante*, it was "undisputed that the defendant and his attorney did not discuss the defendant's status as a legal alien, and that the attorney did not provide any misleading or incorrect advice with respect to the immigration consequences of a criminal conviction." *Huante*, 143 Ill. 2d at 68, 571 N.E.2d at 740.

test must be satisfied before a defendant can prevail on a claim of ineffective assistance of counsel).[4]

Finally, the supreme court noted its disapproval of *People v. Maranovic*, 201 Ill. App. 3d 492, 559 N.E.2d 126 (1990), *People v. Miranda*, 184 Ill. App. 3d 718, 540 N.E.2d 1008 (1989), and *People v. Padilla*, 151 Ill. App. 3d 297, 502 N.E.2d 1182 (1986), "to the extent that those decisions are inconsistent with our present opinion." *Huante*, 143 Ill. 2d at 74, 571 N.E.2d at 742.

The defendant contends that the decision in *Huante* is confined to its facts. He submits that the decisions in *Maranovic*, *Miranda* and *Padilla* remain good law based on the factual differences between those cases and *Huante*. He further submits that the supreme court recognized that fact by not overruling those cases in their entirety. We disagree.

The decisions in those cases rested on the determination that defense counsel's failure to advise a defendant of the collateral consequences of deportation upon a plea of guilty was ineffective assistance of counsel. See *Maranovic*, 201 Ill. App. 3d at 494-95, 559 N.E.2d at 127-28 (failure to investigate potential deportation consequences constitutes ineffective assistance of counsel, if trial counsel had sufficient information to form a reasonable belief that defendant was an alien); *Miranda*, 184 Ill. App. 3d at 727, 540 N.E.2d at 1014 (knowing that the defendant was an illegal alien, the failure to discuss immigration consequences resulted in defense counsel's advice falling outside the range of competence demanded of defense attorneys in criminal cases); *Padilla*, 151 Ill. App. 3d at 303, 502 N.E.2d at 1186 (overall trend in state courts favors finding ineffective assistance of counsel rendering a guilty plea involuntary where counsel knows his client is an alien and does nothing to inform him of possible consequences).

---

[4]Nonetheless, the court went further and determined that the defendant had failed to establish the prejudice prong of the *Strickland* test as well. The court noted the defendant's mere allegation that, had he been advised of the deportation consequences of his guilty plea he would have gone to trial, was insufficient, in and of itself, to establish prejudice. The court noted the strength of the prosecution's case against the defendant and that the terms of the plea agreement were such that the defendant would have had reason to continue with his plea agreement, even if he was aware of the deportation consequences. Therefore, the court concluded that the record did not demonstrate a " 'reasonable probability' " that advising defendant of the deportation consequences of a conviction would have led him to reject the terms of the plea agreement." *Huante*, 143 Ill. 2d at 73, 571 N.E.2d at 742.

We note that *Padilla*, which was relied on in both *Maranovic* and *Miranda*, itself relied, in part, on the supreme court's decision in *Correa*. In *Correa*, our supreme court upheld the granting of postconviction relief to a defendant who had pleaded guilty based upon erroneous and misleading advice of his defense counsel. Noting that it is counsel's responsibility and not that of the court to advise a defendant of the collateral consequences of a plea of guilty, the court stated as follows:

> "Our case is not one in which counsel simply failed to advise the defendant of the collateral consequence of deportation. In our case the defendant specifically asked counsel's advice on the question."
> *Correa*, 108 Ill. 2d at 550, 485 N.E.2d at 311.

The court in *Padilla* noted that, while the *Correa* court did not address the question of merely passive conduct on the part of an attorney, the *Correa* court, nonetheless, cited cases from other jurisdictions finding such passivity questionable. *Padilla*, 151 Ill. App. 3d at 301, 502 N.E.2d at 1184-85; see *Correa*, 108 Ill. 2d at 551, 485 N.E.2d at 311.[5] In addition to the decision in *Correa*, the *Padilla* court cited cases from other jurisdictions to support its conclusion that the failure of a defense attorney to inform a defendant of the consequences of his guilty plea, where defense counsel admitted that he knew that the defendant was an alien and that drug convictions could result in deportation, constituted ineffective assistance of counsel.[6]

In *Correa*, defense counsel had given erroneous advice to the defendant. *Padilla* extended the holding of *Correa* to cases in which defense counsel had failed to give advice as opposed to giving the wrong advice. The holding in *Huante* overrules the holding in *Padilla* and its progeny that the failure to volunteer advice as to a collateral consequence of a guilty plea constitutes ineffective assistance of counsel.[7]

While the supreme court distinguished *Correa* in its opinion in

---

[5]One of those cases, *Commonwealth v. Wellington*, 305 Pa. Super. 24, 451 A.2d 223 (1982), was overruled in *Commonwealth v. Frometa*, 520 Pa. 552, 555 A.2d 92 (1989) (court declined to find that an attorney who failed to advise a defendant of the deportation consequences of a guilty plea provided ineffective assistance of counsel under *Strickland*).

[6]In *Padilla*, the defendant testified that his defense counsel assured him that he would not be deported if he pleaded guilty. Defense counsel denied ever discussing the subject of deportation. The circuit court made no comment as to the credibility of the witnesses. The *Padilla* court stated that it need not further address that issue in light of its disposition of the case. *Padilla*, 151 Ill. App. 3d at 301, 502 N.E.2d at 1185.

[7]The defendant also relies on *People v. Luna*, 211 Ill. App. 3d 390, 570

*Huante*, the court did not the cite *Correa* as one of the cases it now disapproved of in light of its decision in *Huante*. The failure of the supreme court to include *Correa* in its list of disapproved cases is troublesome because it suggests that the supreme court intended to draw a distinction between the failure to give advice and the giving of erroneous advice, as was the case in *Correa*. Yet, under *Huante*, because deportation is a collateral consequence of a plea of guilty, it should make no difference whether the advice was correct or not. See *People v. Maury*, 287 Ill. App. 3d 77, 83, 678 N.E.2d 30, 34 (1997) (this court, citing *Huante*, held that the correctness of the information counsel provided regarding a collateral consequence was irrelevant to whether the attorney performed reasonably by ensuring that his client voluntarily and intelligently entered his guilty plea). In any event, since the case before us does not concern the giving of erroneous advice, we need not resolve this particular puzzle.

■ In the present case, taking the allegations of the petition and the defendant's affidavit as true, the defendant advised Mr. Davenport, his attorney, that he was an alien and was in the process of applying for immigration benefits and that he did not know what effect a criminal case would have on his immigration status or his application, though he suspected that it might be negative. However, the defendant never asked for, and Mr. Davenport never gave him advice about the effect his plea of guilty would have on his immigration status. The defendant never discussed his immigration situation with Mr. Slaw, the attorney who actually appeared with him when he pleaded guilty.[8] There is no allegation that Mr. Davenport provided erroneous information to the defendant regarding his immigration situation.

Under the holding in *Huante*, Mr. Davenport was not required to volunteer information concerning the deportation consequences of a criminal conviction. Further, in this case, unlike *Correa*, Mr. Davenport did not provide the defendant with any erroneous information regarding the effect of his guilty plea on his immigration status.

We conclude that the defendant has failed to make a substantial showing that the conduct of his attorney, Mr. Davenport, in this case fell " 'below an objective standard of reasonableness.' " *Huante*, 143

---

N.E.2d 404 (1991). Although not included in *Huante*'s list of disapproved cases, *Luna* relied on *Maranovic*, *Miranda*, *Padilla* and the appellate court decision in *People v. Huante*, 194 Ill. App. 3d 159, 550 N.E.2d 1155 (1990), which was reversed by the supreme court.

[8]At the May 26, 2000, hearing on the State's motion to dismiss, defendant's postconviction counsel agreed that it was Mr. Davenport's conduct which was at issue and not that of Mr. Slaw.

Ill. 2d at 71-72, 571 N.E.2d at 741, quoting *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. As the defendant failed to satisfy the first prong of the *Strickland* test, the circuit court correctly dismissed his petition for postconviction relief.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

CERDA and SOUTH, JJ., concur.