THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON ASTOR JONES, Defendant-Appellant.

First District (3rd Division)   Nos. 1—04—2500, 1—04—2677 cons.

Opinion filed June 29, 2005.

Joshua T. Buchman, Douglas E. Whitney, John P. Killacky, and Benjamin J. Hanauer, all of McDermott, Will & Emery, L.L.P., of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Michael J. Ferrara, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SOUTH delivered the opinion of the court:

Following a bench trial on October 17, 1978, defendant Brandon Astor Jones was convicted of robbery and sentenced to 3 years' probation and 18 months of weekend confinement at the Cook County Jail Work Release Center. Subsequently, he was arrested in Georgia, where

he was then convicted and sentenced to death. Defendant is currently on death row in Georgia.

Defendant was arrested on June 6, 1978, after an incident that occurred on a Chicago Transit Authority (CTA) train. On the morning of his trial, defense counsel advised the court that a continuance might be necessary to secure the attendance of a witness. The trial was then set for 1 p.m., at which time defendant elected a bench trial and was admonished of his right to a jury trial by the court.

Chicago police officer Dennis Vales testified that he responded to a call at approximately 3:20 a.m. at the CTA elevated train stop at Belmont Avenue with his partner, Officer Skidmore. Officer Vales boarded the first car of the southbound train, where he found the conductor, Gene Hickmott, and defendant. Both Hickmott and defendant were saying that they had been robbed by each other. Defendant never stated what had been taken from him, only that he had been robbed. Both defendant and Hickmott were given *Miranda* warnings and searched. Nothing was recovered from Hickmott, but a watch and a ring with two stones and a triangle were recovered from defendant. Officer Vales put both items in his pocket and separated the two men. Defendant was asked to describe the items but he was unable to do so. Officer Vales testified that Hickmott, who is Caucasian, was tanned, and he saw the outline of a ring on his finger and an outline of a watch on his wrist similar to the one recovered from defendant. No such marks were observed on defendant. On cross-examination, Officer Vales was asked whether he remembered what defendant was wearing, to which he replied that he did not.

Gene Hickmott testified that he was on a CTA train at approximately 3 a.m. He boarded the train at Loyola and was carrying a bag that contained a mouse in a cage which he was going to use to help him catch a loose ferret. Hickmott stated that he sat in the rear of the second car, and at the Grandville station, someone sat next to him. That person put his hand on Hickmott's shoulder and said "Give me your money." Though Hickmott could not see the person at that time, he saw the person's reflection through the train window and that the person was a black male wearing a blue shirt. Hickmott told the man that he did not have any money, but he was wearing a watch and two rings, one of which had two stones and a triangle. The man, whom Hickmott identified in court as defendant, took the watch and a ring from him. Defendant then told him that he would be exiting the train at Belmont and that Hickmott was to get off with him. Hickmott initially protested, but finally acquiesced. When they stood up, Hickmott pushed defendant and ran down the aisle into another car. He saw a conductor opening the doors and announcing stops, and

defendant was standing in the doorway of the car Hickmott had just left, but defendant did not exit the train. Defendant then entered the first car, where Hickmott and the conductor were. Hickmott told the conductor that defendant had just robbed him, and defendant told the conductor that Hickmott had robbed him. The conductor called the police, and Officers Vales and Skidmore arrived about 10 to 15 minutes later. Hickmott's rights were read to him and he was searched. He told the officers what had been taken from him and showed them the tan lines from the watch and ring. Hickmott subsequently identified the watch the officer recovered from defendant. He was not shown the ring until they were at the police station. On cross-examination, Hickmott was asked whether he remembered what defendant was wearing that day, to which he replied a shirt and brown trousers.

The State rested its case in chief after both parties stipulated that defendant was then 35 years old.

Defense counsel then made an oral motion for a continuance to bring in a material witness, the train conductor, Mr. Brakes.[1] The State objected that the defense had more than four months to secure the witness and at least a month from the last court date to secure his presence. Defense counsel responded that they did not know whether or not to use Brakes until they heard Hickmott's testimony. The court allowed defendant to make an offer of proof, although it noted that "it is not apparent to the court why you wouldn't need an eyewitness if you were defending a case." Defense counsel then made an offer of proof that Mr. Brakes was a conductor on the train on the date and time in question, that he saw defendant asleep in the second car, he observed both the complainant and defendant walk together outside to the platform and reenter the train, and each claimed that he had been the victim of a robbery. The trial court denied the defense request, indicating that the variance between the testimony was not significant enough to affect the identification or the events on the train, and that the testimony would be "cumulative at best." Before resting its case, the defense stated for the record that the court's ruling on their motion for continuance affected the entire posture of the defense and put an extreme burden on the defense to proceed without the witness.

After hearing argument from both the State and the defense, the trial court found defendant guilty, stating that the case turned on whether the court was persuaded beyond a reasonable doubt of defendant's guilt on the testimony of the single occurrence witness, Hickmott, 'with some corroboration by the police officer's testimony.

---

[1]Mr. Brakes was incorrectly referred to throughout the report of proceedings as Mr. Briggs.

The court also noted that, to be fair, it considered whether its decision would have been altered had Brakes testified substantially in accordance with the offer of proof and found that it would not.

Defendant made an oral motion for new trial on the basis of insufficient evidence on the date of the sentencing hearing, November 14, 1978, which was denied. The matter then proceeded to the sentencing hearing. After the hearing, defendant was sentenced to 3 years' probation with an 18-month period of weekend work release. Defense counsel also noted for the record that defendant had decided not to file a notice of appeal as a result of his sentence and that he would conform to those conditions of probation.

Subsequently, defendant was arrested in Georgia and sentenced to death. His postconviction petition was filed by counsel on October 3, 2003. His petition contained the following allegations: (1) that he received ineffective assistance of trial counsel in that counsel was inadequately prepared for trial, failed to subpoena or otherwise secure the attendance of a critical witness, failed to make a complete and effective offer of proof as to the absent witness, failed to effectively cross-examine the State's witnesses and failed to pursue a direct appeal; (2) that he was denied his right to testify in his own defense; and (3) that he was denied his right to a jury trial. Attached to the petition as supporting documentation was the following: the report of proceedings from defendant's trial; the specifications and certificate of conditions for the probation sentence; the periodic imprisonment order—weekends; the police report; the report on the interview with defendant; the September 5, 1978, letter from Robert Hollis to the CTA; a jury waiver; the neuropsychiatric examination report; the notice of appeal; a petition for violation of probation and periodic imprisonment and an application for warrant/summons; the affidavit of defendant; the affidavit of Earl Brakes; and the affidavit of Michael McMillan (an employee of defendant's current counsel).

The State filed a motion to dismiss defendant's petition because defendant had no standing to file the petition as he did not serve his sentence and had a warrant pending for violation of the probation sentence in this case, that it was untimely, that it alleged no new evidence and that trial counsel was not ineffective. The State's motion also included an affidavit of Earl Brakes.

The court initially denied the State's motion in part, and the State filed a motion to reconsider. At the hearing on the State's motion to reconsider, the trial court reversed itself and granted the State's motion, finding that Brakes' testimony was not newly discovered evidence and defendant's remaining allegations should have been raised on direct appeal. Defendant appeals that ruling in case No. 1—04—2500.

Subsequent to filing the notice of appeal from the dismissal of his postconviction petition, defendant filed a motion in this court to docket his appeal from the 1978 trial proceedings. In his motion, defendant alleged that despite a timely notice of appeal filed with the clerk of the circuit court of Cook County, his appeal was never transmitted or docketed in this court, and he provided a copy of a notice of appeal purportedly from November 14, 1978. Based on the information before the court at that time, we granted defendant's motion and ordered that his notice of appeal be docketed as case No. 1—04—2677. The two appeals were then consolidated.

On appeal, defendant contends that the postconviction court erred in reversing its original ruling and dismissing his petition. He also contends (for his direct appeal) that he was denied his right to present a defense at trial when the trial judge summarily denied his motion for a continuance to secure the attendance of a critical eyewitness.

We first address whether defendant's postconviction petition was properly dismissed on the State's motion by the trial court. The trial court stated that the State's motion was granted because it had erroneously found that Mr. Brakes' testimony was newly discovered evidence, and at the original trial, defendant's counsel made an offer of proof concerning Mr. Brakes' testimony. The court also noted that the original trial judge saw fit not to grant the continuance and that this issue should have been a matter for direct appeal. The court also noted that there was an issue of timeliness of the postconviction petition.

Postconviction relief is a collateral proceeding and not an appeal from the underlying judgment. *People v. Washington*, 348 Ill. App. 3d 231, 235 (2004). The purpose of the proceeding is to allow inquiry into the constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). An issue that could have been raised on direct appeal, but was not, is waived. *People v. Dockery*, 296 Ill. App. 3d 271, 275 (1998).

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2002)) provides that a defendant may challenge his conviction by alleging that the proceedings which resulted in his conviction were the result of a substantial denial of rights under the United States Constitution and the Illinois Constitution. 725 ILCS 5/122—1 (West 2002). A petition filed under the Act must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122—2 (West 2002). The petition shall have attached "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122—2 (West 2002).

Section 122—1(c) of the Act governs the limitations period on the institution of postconviction actions. That section provides in pertinent part:

"When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than 6 months after the denial of the Petition for Leave to Appeal to the Illinois Supreme Court, or more than 6 months from the date for filing such a petition if none is filed, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122—1(c) (West Supp. 2003).

In a noncapital case, the Act provides a three-stage procedure for postconviction relief. *People v. Bouzidi*, 332 Ill. App. 3d 87, 90 (2002). At stage one, the trial court, without input from the State, examines the petition only to determine if the petition pleads a constitutional deprivation unrebutted by the record, rendering the petition neither frivolous nor patently without merit. 725 ILCS 5/122—2.1(a), (b) (West 2002). If the petition is not dismissed at stage one, it proceeds to stage two, where section 122—4 of the Act provides for the appointment of counsel for indigent defendants who want appointed counsel. 725 ILCS 5/122—4 (West 2002). At stage two, pursuant to section 122—5, the State has the opportunity to answer or move to dismiss the petition (725 ILCS 5/122—5 (West 2002)), and the circuit court determines whether the petition and any accompanying documentation allege a substantial showing of a constitutional violation (*Bouzidi*, 332 Ill. App. 3d at 90). Under both the first- and second-stage procedures, the circuit court is foreclosed from engaging in any fact finding because all well-pleaded facts not rebutted by the record are to be taken as true. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). However, nonfactual and nonspecific assertions that merely amount to conclusions are not sufficient to require a hearing under the Act. *Bouzidi*, 332 Ill. App. 3d at 91. "The dismissal of a postconviction petition is warranted only when the petition's allegations of fact, which are to be liberally construed in favor of the petitioner and in light of the original trial record, fail to make a substantial showing of a constitutional violation." *Bouzidi*, 332 Ill. App. 3d at 91.

If a substantial showing is made, then the petition advances to the third stage, where the circuit court conducts an evidentiary hearing. *Bouzidi*, 332 Ill. App. 3d at 90. Here, defendant's petition was dismissed on the State's motion; accordingly, we will apply the rules applicable to the second stage of a postconviction proceeding. The standard of review applicable to both the first and second stages of postconviction proceedings is *de novo. Bouzidi*, 332 Ill. App. 3d at 91.

■ Reviewing the allegations of defendant's petition, which was

filed 25 years after the conviction, and his supporting documentation, we conclude that the petition was properly dismissed because it was untimely and failed to raise a constitutional violation. Furthermore, it did not allege any facts showing that such delay was not due to his own culpable negligence. In fact, the motivating factor for filing the postconviction petition appears to be related to the Georgia proceedings that resulted in defendant being placed on death row. Moreover, each issue raised in the petition, except for the allegation that trial counsel was ineffective for failing to file an appeal, was an issue that should have and could have been raised on direct appeal.[2] Accordingly, we find that the trial court properly dismissed defendant's postconviction petition without an evidentiary hearing.

■ Regarding defendant's "newly discovered" 1978 notice of appeal, defendant filed a motion in this court seeking to have that notice of appeal docketed because it appeared that the notice, while filed in the circuit court, was never docketed by this court. An appeal is perfected by filing a notice of appeal with the clerk of the trial court, signed by the appellant or his attorney, within 30 days after the entry of the final judgment appealed from. 188 Ill. 2d Rs. 606(a), (b). This court granted defendant's motion, over the objection of the State, based on the copy of the purported notice of appeal. The notice of appeal presented with defendant's motion was dated November 14, 1978, the same date that defendant's sentencing order was entered. Although the motion was granted, the State's brief once again challenges the jurisdiction of this court to consider this portion or defendant's appeal. We have reviewed the record as a whole and now conclude that defendant's motion should not have been granted for the following reasons.

Ordinarily, no appeal may be taken "after the expiration of 30 days from the entry of the order or judgment from which the appeal is taken." 188 Ill. 2d R. 606(b). In criminal appeals, however, there are two exceptions. If a motion, supported by a showing of reasonable excuse for failing to timely file a notice of appeal, is filed in the reviewing court no later than 30 days after the expiration of the original 30-day period for filing the notice of appeal, the reviewing court may grant leave to appeal. 188 Ill. 2d R. 606(c). Or, if a motion, supported by an affidavit showing that the appeal is meritorious and that the failure to timely file a notice of appeal was not due to the appellant's culpable negligence, is filed in the reviewing court no later than 6 months after the expiration of the original 30-day period for filing the

---

[2]Regarding this issue, defendant has apparently abandoned that argument in light of his "newly discovered" undocketed 1978 notice of appeal.

notice of appeal, the reviewing court may grant leave to appeal. 188 Ill. 2d R. 606(c).

In the case at bar, the notice of appeal, though purportedly timely filed in the circuit court, was never transmitted or docketed in this court, and defendant, while acknowledging that no record of it appears in the circuit court records, State's Attorney's records, Public or Appellate Defender's records or this court's records, has not indicated how this document was obtained or from where it was obtained. Further, the copy of the purported 1978 notice of appeal is unauthenticated, as defendant has not produced the original. We note that both affidavits from employees of defendant's counsel's firm indicate that they were given a copy of the notice of appeal to investigate and that their investigation turned up no record of it anywhere. Moreover, we note several discrepancies among the various copies of the purported notice of appeal. Finally, the notice of appeal contained no signature by either of defendant's trial attorneys or defendant himself, and there is no notary seal, only an illegible signature on the notary line. We also note that the record of proceedings on the date that the purported notice of appeal was filed indicated that defendant did not intend to file a notice of appeal. Filing of the notice of appeal is jurisdictional (188 Ill. 2d R. 606(a)), and this court has no discretion to extend its jurisdiction. Accordingly, this court's order of October 6, 2004, allowing defendant leave to docket his 1978 notice of appeal is vacated, and that portion of the appeal is dismissed. See *People v. Williams*, 82 Ill. App. 3d 681, 683 (1980).

For the forgoing reasons, we affirm the decision of the postconviction court in dismissing defendant's postconviction petition without an evidentiary hearing in case No. 1—04—2677, and the appeal in case No. 1—04—2500 is dismissed.

No. 1—04—2677, Affirmed.
No. 1—04—2500, Dismissed.

KARNEZIS, P.J., and HOFFMAN, J., concur.