NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200069-UB

NO. 4-20-0069

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 29, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH T. WISNIEWSKI, Defendant-Appellant. | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Morgan County No. 18CF226 Honorable Christopher E. Reif, Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    To recharacterize a *pro se* letter as a petition for postconviction relief, a circuit court must follow the procedure in *People v. Shellstrom*, 216 Ill. 2d 45, 57 (2005).

¶ 2    Defendant, Joseph T. Wisniewski, who is serving a prison term of 10 years for criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2018)), appeals from an order in which the Morgan County circuit court ruled, hypothetically, "[T]his matter is summarily dismissed *if* [defendant's *pro se* letter to the court is] a post-conviction petition." (Emphasis added.) To validly recharacterize his letter as a postconviction petition, defendant argues, the court had to give him the warnings required by *People v. Shellstrom*, 216 Ill. 2d 45, 57 (2005), and the court did not do so. Noncompliance with *Shellstrom* is his primary ground of appeal. Alternatively, he argues that if the letter in question was, by its own self-characterization, a *pro se* petition for postconviction

relief, that letter and the letters that followed it stated the gist of a constitutional claim and therefore the summary dismissal was unjustified.

¶ 3        Originally, we did not reach the merits of those arguments, but, instead, we dismissed defendant's appeal for lack of jurisdiction. See *People v. Wisniewski*, 2021 IL App (4th) 200069-U. On September 30, 2021, however, in the exercise of its supervisory authority, the supreme court directed us to vacate our judgment and to consider the appeal on its merits. Accordingly, on November 29, 2021, we vacated our judgment in *Wisniewski*, 2021 IL App (4th) 200069-U, and we reinstated the appeal for consideration on its merits.

¶ 4        Now that the supervisory order has cleared away any jurisdictional obstacle to reaching the merits of this appeal, we conclude as follows. Without following the procedures in *Shellstrom*, 216 Ill. 2d at 57, the circuit court recharacterized defendant's letter of October 24, 2019, as a postconviction petition. Therefore, we vacate the judgment, and we remand the case with directions to follow *Shellstrom*.

¶ 5                                I. BACKGROUND

¶ 6        In a hearing on March 5, 2019, defendant proposed entering a negotiated guilty plea to count I of the information, a count that charged him with criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2018)). By the terms of his agreement with the State, he would receive a prison sentence of 10 years, and the State would *nolle pros* count II, which charged him with unlawfully possessing child pornography (*id.* § 11-20.1(a)(6)).

¶ 7        The circuit court asked the prosecutor for a factual basis for the proposed guilty plea. The prosecutor described the factual basis as follows:

> "If necessary to prove the charge, Your Honor, the People would call as a witness A.W. A.W. would testify that the Defendant is her father and that she is under the

age of 18 years old, and that at some time between June and October 2018, the Defendant placed his penis in the vagina of A.W. She would further testify that these events occurred in Morgan County, and she would identify the, in open court the Defendant as the perpetrator of this crime."

The court asked defense counsel if he would stipulate that the factual basis was the evidence the State would present in a trial. Defense counsel answered, "I believe that's what the State could prove, yes, Your Honor." The court then asked the defendant if he agreed that the factual basis would be the State's evidence. He answered yes.

¶ 8        After further admonitions and questions to defendant, the circuit court accepted his guilty plea to count I and sentenced him to the agreed-upon prison term of 10 years. The court told him he would have to serve at least 85% of the prison term and that after he was released from prison, he would have to serve a term of mandatory supervised release ranging from three years to life.

¶ 9        On June 24, 2019, the circuit court received the first of seven *pro se* letters from defendant. In his first letter, defendant claimed that after coercing him into surrendering his phone, the police illegally searched his phone. The police seized three phones in all. He claimed that the third phone, the one containing nude photos of A.W., was actually her phone, not his. He claimed that he had pleaded guilty only because defense counsel, who never reviewed the evidence, had "falsely represented" him. He claimed that defense counsel had lied to him about mandatory supervised release by telling him it was the period of time during which he, defendant, would be required to register as a sex offender. He claimed that, contrary to his guilty plea, he never had any sexual contact with A.W. In fact, according to defendant, A.W. attempted several times to make an official recantation of her allegations against him, but, each time, the police and the prosecutor

used intimidation tactics to dissuade her from recanting. The court never responded to this first letter from defendant.

¶ 10        On October 24, 2019, the circuit court received the second letter from defendant. The letter read in part as follows:

>        "My name is Joseph Wisniewski. I am writ[ ]ing you about case # 2018-CF-226. On Oct 10th in case # 2018-JA-18 and case # 2018-JA-19 there was new evidence given to all part[ies] in a handwrit[t]en letter saying I did not do any of the things I was said to have done in this case.

>        The person that gave the letter also talked to my lawyer Robert V. BonJean III also her lawyer Thomas H. Piper GAL and told them she lied about all she said at the start.

>        In her doing this I'm asking for you to please withdraw my plea or Post Conviction relief based on new evidence being given to the court in case # 2018-JA-18 and 19 prov[ ]ing my innocence in case # 2018-CF-226.

>        I am also req[u]esting this because not only I did not do any of the things that was said I did and A.W. recanted in a handwrit[t]en letter that was given by A.W. in case # 2018-JA-18 and 19 saying I did not do these things. I also want my case reopened because I had ineffective assistance."

¶ 11        On October 24, 2019, the circuit court entered an order responding to defendant's second letter as follows:

>        "The Defendant's Motion to Withdraw the Plea is untimely and therefore, the Court lacks jurisdiction to hear the Motion. If the motion were to be construed as a Post Conviction Motion then the Court after review finds it to be frivolous and

patently without merit. The Court notes that the Motion is not supported by affidavits or documents. There is also no reason given why these requirements are not met.

Wherefore, this matter is summarily dismissed if a post-conviction petition."

But see *People v. Johnson*, 2021 IL 125738, ¶ 54 (holding that, in the initial examination of the postconviction petition, the court may take judicial notice of public documents, such as "a court record"); *People v. Jackson*, 182 Ill. 2d 30, 66 (1998) (observing that "a court will take judicial notice of its own records").

¶ 12        On November 5, 2019, the circuit court received the third letter from defendant. In his third letter, he complained that, instead of reviewing the evidence and investigating the case, defense counsel had advised him that unless he pleaded guilty, he would be sentenced to imprisonment for 30 years. Defendant enclosed a letter purportedly handwritten and signed by A.W. At the top of A.W.'s letter, the following is written: "Put in Juv court case # 2018-JA-18-19 Oct 10 2019—9 AM in File Evidence." Addressing Judge Tobin, A.W. confessed in her letter, "I lied about everything just to get back at my dad. *** I feel like I was getting pressured into say[ing] things that the cops wanted me to." In the light of this new evidence, defendant requested to withdraw his guilty plea.

¶ 13        On November 15, 2019, the circuit court received the fourth letter from defendant. This letter reiterated the claims he had made in previous letters, including the claim that defense counsel had misinformed him about mandatory supervised release. According to defendant, defense counsel had explained mandatory supervised release as a requirement to register as a sex offender for three years after defendant was released from prison. Also, defendant complained,

defense counsel had neglected to inform him that, by pleading guilty, defendant would agree to be subject to parole and that if he were unable to find living quarters during the period of mandatory supervised release, he could be confined indefinitely. Finally, according to this fourth letter from defendant, he made a request to defense counsel, one week after pleading guilty, that defense counsel file on his behalf a motion to withdraw the guilty plea. Defense counsel refused to do so, defendant alleged, and the reasons that defense counsel gave for the refusal were that such a motion would be a waste of time and only would result in a longer prison sentence.

¶ 14　　　　On November 15, 2019, in response to defendant's fourth letter, the circuit court entered an order reading as follows: "The Court has already ruled on [defendant's] Post-Conviction Petition. [Defendant] did not obtain leave to file a successive petition."

¶ 15　　　　On December 4, 2019, defendant filed a *pro se* document titled "Petition for Leave of Post-Conviction Patition [*sic*]." The document read as follows:

> "I am asking the court to grant me leave from my first try at fil[ ]ing a Post-conviction Patition [*sic*] on my own.
>
> I yet again have no help and no idea of how to file these things. (can you ap[p]oint me a lawyer for help)
>
> If the Court would please grant me this leave I would thank you.
>
> I have more new evidence to prove I did not do this crime or crimes.
>
> I would ask the court to grant me a second chance to file a successive Post-conviction Patition [*sic*].
>
> Please and thank you."

In a postscript beneath his signature, defendant wrote:

"If the court would be so kind would the court also ap[p]oint me a lawyer to help me in fil[ ]ing a Post-conviction Patition [*sic*] please.

Monroe McWard is no longer my lawyer for this matter. Thank you for your time."

¶ 16    In an order entered on December 4, 2019, the circuit court ruled: "[Defendant's] motion is denied."

¶ 17    In his fifth letter, dated December 8, 2019, defendant informed the circuit court that he had fired McWard for refusing to read his case file and for "never look[ing] into anything," including A.W.'s recantation. Insisting that he "did not do this crime," defendant again requested the court to "[p]lease ap[p]oint counsel so [defendant could] file a successive"—and then the bottom of the letter is cut off in the electronic record.

¶ 18    On December 18, 2019, the circuit court entered the following order: "[Defendant] is not entitled to counsel. This Court has repeatedly denied [defendant's] motion for a successive petition."

¶ 19    On December 27, 2019, the circuit court received a sixth letter from defendant. He asked why the court "turn[ed] down everything [he] file[d]." He wondered if "it [was] because if and when [his] case [went] back to court[,] all [his] charges [would] get dropped and [the court] [did not] want to loose [*sic*] the conviction." He wondered, alternatively, if it was because "the State [did not] like the idea [that his] kid lied and [was] now telling the truth." Again, defendant requested the appointment of an attorney.

¶ 20    On January 6, 2020, the circuit court received the seventh letter from defendant. He repeated the claims he previously made, and he added a history of misconduct by A.W., of which lying to the police, according to defendant, was only one example. He argued that "[w]ith new

evidence being given to [the court, his] post-conviction should not have been denied." He inquired, "Can I amend the post-conviction to make it good?" He again requested the appointment of defense counsel to replace McWard, who no longer was his attorney.

¶ 21    On January 6, 2020, the circuit court entered the following order:

"Defendant continues to write weekly letters and requests to the Court despite the Court already answering the same questions repeatedly.

DEFENDANT IS NOT ENTITLED TO COUNSEL AND NONE WILL BE APPOINTED.

DEFENDANT IS NOT GRANTED LEAVE TO FILE REPEATED SUCCESSIVE POST CONVICTION PETITIONS.

REPEATED REQUEST FOR THE SAME ISSUES WILL NOT BE ANSWERED."

¶ 22                                    II. ANALYSIS

¶ 23    Section 122-1(d) of the Post-Conviction Hearing Act (Act) provides as follows:

"A person seeking relief by filing a petition under this Section must specify in the petition or its heading that it is filed under this Section. A trial court that has received a petition complaining of a conviction or sentence that fails to specify in the petition or its heading that it is filed under this Section need not evaluate the petition to determine whether it could otherwise have stated some grounds for relief under this Article." 725 ILCS 5/122-1(d) (West 2018).

¶ 24    An argument could be made that by requesting "Post Conviction relief"—which is a term of art meaning relief under the Act (see *Johnson*, 2021 IL 125738, ¶ 32; *People v. Jones*, 358 Ill. App. 3d 379, 383 (2005))—defendant's letter of October 24, 2019, adequately specified

that it was filed under section 122-1. See *People v. Partee*, 125 Ill. 2d 24, 35 (1988) (referring to "an action for post-conviction relief under section 122-1"); *People v. Collins*, 161 Ill. App. 3d 285, 288 (1987) (observing that "[s]ection 122-1 *** specifically provides that post-conviction relief is available to persons 'imprisoned in the penitentiary' " (citing Ill. Rev. Stat. 1985, ch. 38, ¶ 122-1)); *cf. People v. McDonald*, 373 Ill. App. 3d 876, 880 (2007) (holding that by referring to itself on every page as a " 'Post-Conviction Petition,' " the petition adequately signified that it was filed pursuant to section 122-1). To be sure, the letter was not in the conventional form of a petition for postconviction relief. It had no caption. It bore no title. And yet, even though it lacked the usual trappings of a judicial petition, defendant's letter of October 24, 2019, was a request, in writing, that the circuit court grant him postconviction relief. "As applied to legal procedure[,] a petition is ordinarily defined as a formal request or application in writing made to a court requesting judicial action of some character and usually signed by a litigant or by his attorneys for him." *Benton Coal Mining Co. v. Industrial Comm'n*, 321 Ill. 208, 214 (1926). That definition aptly describes defendant's letter.

¶ 25        The supreme court, however, has interpreted section 122-1(d) as meaning that a *pro se* pleading must be deemed a postconviction petition only if it references the Act. "In other words," the supreme court said, "if a *pro se* pleading alleges constitutional deprivations that are cognizable under the Act[ ] but *** the pleading makes no mention of the Act, a trial court is under no obligation to treat the pleading as a postconviction petition." *Shellstrom*, 216 Ill. 2d at 53 n.1. Defendant's second letter did not reference the Act. Nor was it even titled as a postconviction petition. Granted, in the body of the letter, defendant requested "Post Conviction relief." But it would be reasonable to question whether defendant, a *pro se* litigant who obviously was no scholar, intended "Post Conviction relief" as a term of art. It could be argued that, more likely, he

intended the term merely in its ordinary linguistic sense as "relief after conviction"—which, after all, is what allowing the withdrawal of the guilty plea would be. His single use of the term "Post Conviction relief" seems, under the circumstances, a small pedestal on which to rest much weight of inference.

¶ 26        Understandably, then, the circuit court was uncertain whether defendant's second letter should be regarded as a postconviction petition. In its order, the court found that "*[i]f* the motion were to be construed as a Post Conviction [petition]," the petition was frivolous and patently without merit. (Emphasis added.) The court ruled, "[T]his matter is summarily dismissed *if* a postconviction petition." (Emphasis added.) "If" radiates uncertainty.

¶ 27        In the State's view, "[t]he language of the [circuit] court's disposition does not reflect uncertainty, as defendant suggests [citation]; rather, it was the means for announcing the alternative disposition." What the court announced, rather, was a hypothetical fallback position. The if-were construction in "*[i]f* the motion *were* to be construed as a Post Conviction [petition]" (emphases added) is called the subjunctive mood, which "expresses *** conditions that are contrary to fact" (Andrea Lunsford & Robert Connors, The St. Martin's Handbook 208 (1989)). When someone says, for example, "*If* I *were* a rich man, I would buy a yacht," he signifies that he is *not* in fact a rich man and that he therefore will *not* buy a yacht. Similarly, by using the phrase "[i]f the motion were to be construed as a Post Conviction petition," the court made a counterfactual statement: the court signified that it did *not* construe defendant's second letter as a postconviction petition.

¶ 28        The uncertainty that prompted this hedging is understandable. A *pro se* filing that alleges a constitutional deprivation without explicitly labeling itself as a postconviction petition under the Act does not have the clear character of a postconviction petition. See 725 ILCS

5/122-1(d); *Shellstrom*, 216 Ill. 2d at 53 n.1. Under *Shellstrom*, the circuit court, upon receiving such an ambiguous document, has a choice: recharacterize the document as a postconviction petition or do not recharacterize it as such. See *Shellstrom*, 216 Ill. 2d at 53 n.1. There can be no middle ground. Recharacterizing the document merely for the sake of argument is not an option. If the court recharacterizes the document as a postconviction petition, the court must commit to that choice unequivocally. The three-step procedure in *Shellstrom* presupposes a recharacterization that is more than hypothetical. For the court must:

> "(1) notify the *pro se* litigant that the court intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive postconviction petitions, and (3) provide the litigant an opportunity to withdraw the pleading or to amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has." *Shellstrom*, 216 Ill. 2d at 57.

¶ 29      Ultimately, the circuit court definitively recharacterized defendant's second letter as a postconviction petition. On November 15, 2019, the court responded to defendant's fourth letter by noting, "The Court has already ruled on [defendant's] Post-Conviction Petition." The trouble is the court did this recharacterization without complying with *Shellstrom*. A remand for compliance with *Shellstrom* is necessary.

¶ 30      Because Judge Reif used all-capitals in responding to defendant's seventh letter, defendant requests us to direct that, on remand, the case be assigned to a different judge. This emphatic use of all-capitals seems to us an insufficient basis to call into question Judge Reif's

impartiality or to infer that he has a hostile attitude toward defendant. Therefore, we deny the request.

¶ 31                                III. CONCLUSION

¶ 32        In accordance with *Shellstrom*, we vacate the judgment of the circuit court, and we remand the case with directions to give defendant an opportunity to withdraw his *pro se* pleading (his second letter) or, in the alternative, to amend it. See *id.*

¶ 33        Vacated and remanded with directions.