2025 IL App (1st) 232103-U

SECOND DIVISION
June 17, 2025

No. 1-23-2103

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10 CR 14198 |
| | ) | |
| EDWARD ELLIOTT, | ) | |
| | ) | Honorable Sofia Atcherson, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the circuit court's decision to dismiss defendant's postconviction petition at the second stage. Defendant has not shown that the evidence attached to his postconviction petition is of such a conclusive character that it would probably change the result of the case on retrial. Defendant has failed to show that postconviction counsel did not provide him with reasonable assistance.

¶ 2    Defendant Edward Elliott was found guilty of first-degree murder following a jury trial. The trial judge sentenced defendant to 60 years in prison. Eight years later, defendant filed a postconviction petition claiming actual innocence. Defendant alleges in his petition that he received an affidavit from the victim's brother which substantiates his claim. In the affidavit, the

victim's brother avers that he met with two men who were present at the time of the murder and convinced them to falsely identify defendant as the shooter.

¶ 3    The petition was advanced to the second stage where the State moved to dismiss defendant's petition. The State argued in its motion to dismiss that the affidavit is not "new evidence" as is required to support his actual innocence claim. The State further argued that the evidence is not material nor is it conclusive. The circuit court dismissed defendant's petition at the second stage. Defendant now appeals the dismissal of his postconviction petition, and we affirm.

¶ 4                                    BACKGROUND

¶ 5    On the morning of July 15, 2010, Chicago Police Officer Andre Woods saw Anthony Cox at a gas station on South Halsted Street. Cox was with his brother, Antonio Cox, as well as Willie Wright and Tyrone Shields. Officer Woods knew Anthony Cox and his family from the community, so the Officer stopped to talk to Anthony and buy him some juice from the gas station. Officer Woods knew the other men as well. While at the gas station, Officer Woods received a call from dispatch that there was a burglary in progress nearby, so he left the gas station and went to the scene of the burglary. Just 5 to 10 minutes later, Officer Woods received a call on his cellphone from Antonio Cox informing him that someone was shooting at Anthony. Officer Woods returned to the gas station and found Anthony Cox lying face down on the ground, having been shot. Anthony was pronounced dead after being taken from the scene by ambulance.

¶ 6    Officer Woods spoke to Antonio Cox at the scene of the shooting. Antonio told Officer Woods that defendant Edward Elliott had shot and killed Anthony. Officer Woods transported

another eyewitness, Willie Wright, to the police station. But Woods did not speak to Tyrone Shields after the shooting because he had left the scene.

¶ 7    Willie Wright testified at trial that he was walking with the Cox brothers and Tyrone Shields near the gas station at Halsted Street and 66th Street. A man approached the group on a bike and began arguing with Anthony. Wright had never seen the man who was riding the bike before that time, but, at trial, he identified the man as defendant Edward Elliott. According to Wright, Anthony Cox told defendant "you got the wrong person," as they were arguing. After a brief argument, Wright watched defendant take a gun from his waistband and shoot Anthony. When the shots were fired, Wright ran down a nearby alley. Defendant rode away on the bike. When Wright returned to the gas station, he saw Anthony on the ground near one of the gas pumps.

¶ 8    When Officer Woods returned to the gas station, Wright told him what happened. Wright went to the police station with Woods, and he identified defendant in a black and white photo array as the perpetrator. Wright then asked to look at a photo array in color, which the officers provided, and he again identified defendant as the perpetrator. Wright stayed at the police station for a period of time, and while Wright was still at the station, officers detained defendant and put him in a live physical lineup. Wright identified defendant in the lineup.

¶ 9    Tyrone Shields testified that he was walking with the Cox brothers and Wright when a man "rode up around the corner, pointed a gun at us, fired a shot off." Shields testified that the shooter used a chrome revolver. Shields also testified that, before the shooting, the shooter said Anthony owed him some money. Shields began to run, and he saw Anthony fall down near a pump at the gas station. Shields ran into the gas station and called 911. When the police and

ambulances arrived, Shields left the gas station so he could go tell Anthony's mother what happened.

¶ 10    Shields first testified that the police called him and told him to come to the police station to give an account of what happened. He then stated, however, that Anthony's brother Antonio and Anthony's friends told him to go to the police station. Once at the police station, Shields identified defendant in a physical lineup. Shields testified that he had never seen defendant before the time of the shooting, but he had heard defendant's name from people in the neighborhood.

¶ 11    On cross-examination, Shields admitted he had spoken to Antonio Cox before going to the police station and that the two had discussed what happened. Shields testified that Antonio mentioned defendant's name during that conversation.

¶ 12    Terrione Smith, brother of Anthony and Antonio, testified that he was sitting on his mother's front porch with some friends two days before the shooting when defendant approached the porch. Defendant told Smith that he was going to kill him and his brothers if he did not get his money. Smith saw that defendant was in possession of a chrome revolver in his waistband, and defendant was lifting his shirt to show Smith the gun. After the shooting two days later, Smith went to the police station to tell them about the earlier confrontation with defendant. Smith identified defendant in a physical lineup.

¶ 13    Imogene Green, the next-door neighbor of Anthony Cox's mother, testified that she was home and out on her own front porch when defendant approached Smith two days before the shooting. Green testified that defendant told Smith something to the effect of, "you're lucky there are witnesses out here because I would have killed you." Green also saw defendant lift his shirt to show a gun. Green testified that, in a different incident three days before the shooting,

defendant approached Cox's mother's house and threatened to kill Antonio Cox. Green went to the police station after Anthony Cox was shot, and she identified defendant in a physical lineup.

¶ 14     Defendant was arrested the same day of the shooting. A gunshot residue test was performed, and defendant was found to have gunshot residue on his shirt but not on his hands or his pants.

¶ 15     Antonio Cox did not testify at trial despite previously being named as an expected prosecution witness. The night before the trial began, an Assistant State's Attorney's wallet and ID badge were stolen from the State's Attorney's office. The prosecutors knew that witnesses from this case were in the office that evening. Someone tried to use the Assistant State's Attorney's stolen credit card. Police officers determined that Antonio Cox was responsible for the theft, and the officers were able recover the ASA's missing ID badge from him.

¶ 16     Following a jury trial, defendant was found guilty of first-degree murder. The trial judge sentenced defendant to 60 years in prison. Defendant filed a direct appeal of his conviction and sentence. We affirmed. *People v. Elliott*, 2017 IL App (1st) 132201-UB. Defendant petitioned for leave to appeal to the Illinois Supreme Court, but his petition was denied. *People v. Elliott*, 89 N.E.3d 758 (Table) (September 27, 2017). Defendant petitioned the Supreme Court of the United States for a writ of *certiorari*, but his petition was denied. *Elliott v. Illinois*, 583 U.S. 1132 (2018).

¶ 17     On June 28, 2021, eight years after his June 25, 2013 conviction, defendant filed a *pro se* postconviction petition. Defendant alleges in his petition that he received an affidavit from Antonio Cox, the victim's brother, on March 3, 2021. Defendant attached the affidavit to his petition. In the affidavit, Antonio Cox states that he told two of the eyewitnesses to identify defendant as the person who shot his brother. The sworn statement was given by Antonio from

prison where he is currently serving a 20-year sentence for murder. Below is nearly the full text of Antonio's handwritten affidavit.

"On July 15, 2010, I convinced both Willie Wright and [Tyrone] Shields to identify J-Rock (Edward Elliott) as the person whom I believed [] shot [and] killed my brother Anthony Cox over [an] ongoing dispute between us. Even though the person that I witnessed shoot my brother fits the description of J-Rock, I must admit that there was a huge difference in height[.] [T]he man that I saw was significantly taller than J-Rock and I completely disregarded the idea[] of the person being anyone else but J-Rock. [Tyrone] Shields admitted to me that he couldn't remember the [man's] face[,] so I showed him a photo of J-Rock that I had stored in my phone and he didn't recognize him[.] [A]t that point I explain[ed] the recent altercation that had transpired between me and J-Rock leading to that day and he agreed to go to the police station[.] Willie Wright already knew who J-Rock was and what had transpired between us so all I had to do was show him the photo to refresh his memory[.] I apologize about the inconvenience but I couldn't withhold this information any longer."

¶ 18    Counsel was appointed to assist defendant with his second-stage postconviction proceedings. Counsel filed a certificate under Illinois Supreme Court Rule 651(c) certifying that he had communicated with defendant to ascertain his claims, that he had examined the record, and he had examined defendant's petition to determine if any amendments were needed. Based on that background work, counsel decided not to file a supplemental petition, concluding that defendant's filing provided an adequate presentation of his constitutional claims.

¶ 19    The State moved to dismiss defendant's petition. The State argued that Antonio Cox's affidavit does not constitute newly discovered evidence. The State also argued that the evidence was not such that it raises the probability of a different outcome if the case was retried. Postconviction counsel opted to set the motion to dismiss for oral argument in lieu of filing a written response to the State's motion.

¶ 20    Following the hearing on the State's motion to dismiss, the circuit court granted the motion in a detailed 10-page written order. The circuit court explained that the affidavit was not newly discovered evidence as Antonio Cox was a known witness before trial. The circuit court pointed out that Tyrone Shields testified at trial that Antonio Cox convinced him to go to the police station, so defendant knew Cox had the opportunity to speak to Wright and Shields before giving their identifications in the case. The circuit court also explained that the statements in Antonio Cox's affidavit were positively rebutted by the trial record. The trial court pointed out, for example, that Willie Wright specifically testified during redirect examination that no one had told him defendant was the shooter.

¶ 21    The circuit court also explained why "[t]he contents of Antonio Cox's affidavit also do not amount to material or conclusive evidence." According to the circuit court, Cox's statement still allowed for the possibility that defendant was correctly identified as the shooter. The circuit court also recounted evidence from the other witnesses not discussed in the affidavit and the physical evidence against defendant to explain that the affidavit from Antonio, even if it was newly discovered evidence, was not of such character that it would likely change the result on retrial.

¶ 22    After his postconviction petition was dismissed by the circuit court, defendant filed this appeal.

¶ 23                                    ANALYSIS

¶ 24     Defendant argues that he has made a substantial showing of actual innocence such that

his postconviction petition should not have been dismissed. Defendant claims that his conviction

was largely based on two eyewitness identifications, and he has presented newly discovered

evidence that the victim's brother coerced those eyewitnesses to falsely identify defendant as the

shooter. Alternatively, defendant argues that postconviction counsel provided unreasonable

assistance by failing to obtain an affidavit from defendant himself and by failing to file a written

response to the State's motion to dismiss the postconviction petition. If the circuit court

dismisses the petition at that stage, we review the circuit court's decision using a *de novo*

standard. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). We may affirm the trial court on any

basis supported by the record. *People v. Mischke*, 2024 IL App (2d) 240031, ¶ 28.

¶ 25     The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.*) provides a process by

which a criminal defendant may challenge his conviction or sentence by filing a petition for

relief in the circuit court. 725 ILCS 5/122-1 (West 2022). The Act provides for a three-stage

process for adjudicating postconviction petitions. *People v. Harris,* 224 Ill. 2d 115, 125 (2007).

At the second stage of proceedings, the circuit court must determine whether the petition and any

accompanying documentation make a substantial showing of a constitutional violation. *People v.*

*Edwards*, 197 Ill. 2d 239, 246 (2001). To advance to the third stage of postconviction

proceedings based upon a claim of actual innocence, a petitioner must show that the evidence is

newly discovered, material and not merely cumulative, and of such conclusive character that it

would probably change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47.

¶ 26    *I.  Actual Innocence*

¶ 27    Defendant argues that he made a substantial showing of actual innocence such that the circuit court erred when it dismissed his postconviction petition.

¶ 28    Defendant argues that, when taking the statements made in Antonio Cox's affidavit as true, which is required at this stage, he has made a substantial showing of actual innocence and, therefore, of a constitutional violation. First, defendant argues that the trial court erred when it found Antonio Cox's affidavit did not constitute "newly discovered" evidence. Second, defendant argues that Antonio Cox's affidavit is material and non-cumulative in that it is both relevant and probative of his innocence. Third, defendant argues that Cox's affidavit places the trial evidence in a different light, as it contains previously unheard evidence that he was not the shooter, and it calls into question Shields' and Wrights' testimony.

¶ 29    The trial court found the evidence was not newly discovered. However, we disagree. For purposes of a postconviction claim based on actual innocence, "newly discovered" means that the evidence was not available at trial and could not have been discovered earlier through the exercise of due diligence. *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 132. The State argues that the evidence is not newly discovered because defendant knew about Antonio before trial and could have even called him as a witness. However, "[i]n advancing an actual innocence claim, it is the *evidence* in support of the claim that must be 'newly discovered,' not necessarily the source. *People v. Class*, 2023 IL App (1st) 200903, ¶ 76 (emphasis in original). "[A]n affidavit from a witness may be newly discovered, even when the defense knew of the witness prior to trial." *Id*. Here, the evidence Antonio now offers was not available to defendant before trial as defendant was not aware of Antonio's alleged plan to coerce witnesses to send defendant to prison and Antonio avers he was not willing to divulge the information any earlier than he

ultimately did. When we accept the allegations of the *pro se* petition as true and view Antonio's affidavit in the light most favorable to defendant, we find the evidence is newly discovered for the purposes of second-stage postconviction proceedings.

¶ 30    However, even where the evidence is newly discovered, evidence in support of an actual innocence claim must be "of such conclusive character as would probably change the result on retrial." *People v. Allen*, 2015 IL 113135, ¶ 22. In other words, for a petitioner to prevail on a claim of actual innocence, we must be able to find that petitioner's new evidence is so conclusive that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. *People v. Sanders*, 2016 IL 118123, ¶ 47. We conclude the evidence in this case is not of such conclusive character that it would probably change the result on retrial.

¶ 31    In his affidavit, Antonio Cox avers that he convinced both Willie Wright and Tyrone Shields to identify defendant as the person who shot and killed his brother. Cox acknowledges in his affidavit that "the person that I witnessed shoot my brother fits the description of [defendant]." However, Cox now states that there was a "huge difference" in height between the perpetrator and defendant, as the other man was significantly taller. Cox claims that Tyrone Shields admitted to him that he could not remember the perpetrator's face, so Cox showed him a photo of defendant stored in his phone. Cox avers that Shields agreed to go to the police station after Cox informed him about the dispute between himself and defendant. Cox further avers that Willie Wright already knew who defendant was and already knew the history between the two men, so Cox merely had to show Wright the photo of defendant to refresh his memory for him to identify defendant as the shooter.

¶ 32    Neither Shields nor Wright have recanted their trial testimony identifying petitioner as the shooter. Antonio's affidavit is not truly recantation evidence as Antonio did not testify at

trial. Antonio does not unequivocally claim that defendant was not the shooter, though that inference can probably be reasonably drawn from Antonio's statements that there is a significant height discrepancy between the shooter and defendant. Nevertheless, we note that Cox does not affirmatively say defendant was not the shooter or that defendant is innocent of the crime. Moreover, Cox maintains in his affidavit that the person he saw shoot his brother fits defendant's description.

¶ 33    Our role in reviewing the dismissal of a postconviction petition is to look at the trial evidence alongside the new evidence and determine whether the new evidence is such that it would probably change the result if the case was retried. *People v. Robinson*, 2020 IL 123849, ¶ 47.

¶ 34    At trial, Officer Andre Woods testified that he spoke to the victim at the gas station and was gone for a matter of minutes before returning. Antonio told Officer Woods right away that defendant was the person who shot his brother. In his affidavit, Antonio does not recant the statement he made to Officer Woods. The testimony at trial was also that, when Officer Woods returned to the gas station, Willie Wright told him what happened. Wright went to the police station with Woods directly from the crime scene, just minutes after the shooting, and he identified defendant from a photo array.

¶ 35    Willie Wright's trial testimony was very detailed and convincing, and it bears indicia of reliability not countered by Antonio Cox's affidavit. Again, he made a statement about the shooting to Officer Woods just minutes after the shooting occurred, and then he went directly to the police station in Officer Woods' presence where he identified defendant from a photo array. Neither Antonio, Shields, or anyone other than a detective were present when Wright made his identification and he repeatedly affirmed that he was making the identification on his own

volition. Wright identified defendant in two separate photo arrays, in a live physical lineup, and again at trial. Wright told detectives he was 100% sure the photos of defendant were photos of the perpetrator as he never forgets a face.

¶ 36    Moreover, in his trial testimony, Willie Wright preemptively rebutted all of the allegations Antonio Cox now makes. After defendant tried to call into question Wright's identification of defendant during cross-examination, the following testimony was introduced on redirect examination.

> "The State: In the morning of July 15, 2010, when [Anthony Cox] got shot, after that gun went off, did anybody tell you Edward Elliot was the person who shot [Anthony]?
>
> Wright: No
>
> The State: Did anybody use the name Edward Elliot that morning?
>
> Wright: No
>
> The State: Did anybody use the name [] J-Rock (defendant's nickname) that morning?
>
> Wright: No
>
> The State: Did anybody tell you who shot [Anthony]?
>
> Wright: No.
>
> The State: Did you see who shot [Anthony]?
>
> Wright: Yes, sir."

The person who Wright saw shoot Anthony was repeatedly identified by him as defendant, and he confirmed no one told him who to identify and he made the identification based on his own observation.

¶ 37    As for Tyrone Shields, he acknowledged at trial that he spoke to Antonio before going to the police station. Shields confirmed that he and Antonio spoke about the shooting incident before he made an identification. The defense confirmed at trial that Shields and Antonio were talking about defendant beforehand and that Antonio mentioned defendant's name while they discussed what had happened earlier in the day. The jury was presented with the theory that Shields' identification was suspect because of his communications about defendant with Antonio Cox prior to the identification being made. The jury, thus, had a full and fair opportunity to evaluate whether the conversation between Shields and Antonio affected Shields' subsequent identification of defendant.

¶ 38    Additionally, Shields' identification of defendant was corroborated by other trial evidence. Shields testified he saw defendant shoot Anthony with a chrome revolver. Terrion Smith testified that defendant came to his mother's home two days before the shooting and threatened to kill him and his brothers while flashing a chrome revolver. Shields also testified that defendant discussed Anthony Cox owing money before shooting him, and Terrion Smith testified that defendant threatened to kill the Cox brothers two days prior because they owed him money.

¶ 39    Imogene Green, the uninterested witness who was the neighbor of the victim's mother, testified that defendant went to the home of the Cox brothers' mother both three days before the shooting and again two days before the shooting and he threatened to kill the brothers. The testimony from Terrion Smith and Imogene Green of defendant threatening the Cox brothers' lives while in possession of a gun two days before Anthony Cox was murdered is corroborative of the other witnesses' identifications of defendant. The physical evidence of defendant having

gunshot residue on his shirt when he was arrested later on the day of the murder is also corroborative of his guilt.

¶ 40    In deciding defendant's direct appeal, we found that "[t]he State presented overwhelming evidence of defendant's guilt." *Elliott*, 2017 IL App (1st) 132201-UB, ¶ 78. We explained that "Wright and Shields testified that they saw defendant shoot Anthony, Terrion and Green testified that they witnessed defendant threaten to kill the Cox brothers days before the shooting, and Chapman testified that defendant's shirt tested positive for [gunshot residue]." Viewing Antonio Cox's attestations as true, as required for purposes of the second-stage motion to dismiss, we conclude that when they are viewed alongside the trial evidence, they are not of such conclusive character to give rise to a probability that the result of the case would change if the matter was retried. Therefore, defendant's argument fails. *Robinson*, 2020 IL 123849, ¶ 47.

¶ 41    *II. Unreasonable Assistance from Postconviction Counsel*

¶ 42    As an alternative basis for relief, defendant argues that his postconviction counsel provided unreasonable assistance. Defendant makes two allegations of unreasonable assistance: (1) postconviction counsel failed to attach defendant's affidavit to show he was diligent in getting the affidavit from Antonio; and (2) postconviction counsel failed to amend the petition to respond to the State's motion to dismiss.

¶ 43    Under the Post-Conviction Hearing Act, a petitioner is entitled to a "reasonable level of assistance" from counsel. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). The reasonable level of assistance that must be provided to petitioners under the Act is less than that afforded by the federal and state constitutions. *Pendleton*, 223 Ill. 2d at 472. The reasonable assistance standard is governed by section 122-4 of the Code of Criminal Procedure and Illinois Supreme Court Rule 651. *People v. Owens*, 139 Ill. 2d 351, 359 (1990).

¶ 44    Postconviction counsel's duties to a petitioner are set forth in Supreme Court Rule 651. Under Rule 651, the postconviction attorney is required to: (1) consult with the petitioner to ascertain his or her contentions of deprivations of constitutional rights, (2) examine the record of the proceedings at the trial, and (3) make any amendments to the *pro se* petition that are necessary for an adequate presentation of the petitioner's contentions. Ill. S. Ct. R. 651(c) (West 2022) (eff. July 1, 2017). When it drafted the Post-Conviction Hearing Act, the General Assembly anticipated that most petitions filed under the Act would be filed by *pro se* prisoners who lacked the assistance of counsel. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 33. Thus, the Act obligates second-stage postconviction counsel to ensure that a petitioner's claims are adequately presented, with counsel ascertaining the basis of the claims, shaping the claims into an appropriate legal form, and presenting the petitioner's contentions to the court. *Id.* Whether postconviction counsel has complied with Rule 651(c) and provided reasonable assistance are questions we review *de novo. Perkins*, 229 Ill. 2d at 41; *People v. Turner*, 2023 IL App (1st) 191503, ¶ 22.

¶ 45    When postconviction counsel files a certificate under Rule 651(c), a rebuttable presumption arises that the petitioner received the level of representation Rule 651 requires. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. To overcome this presumption, the petitioner must demonstrate that postconviction counsel failed to substantially comply with the duties imposed by Rule 651(c). *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. We review *de novo* whether postconviction counsel substantially complied with Rule 651(c). *People v. Collins*, 2021 IL App (1st) 170597, ¶ 31.

¶ 46    In his Rule 651(c) certificate, counsel made representations to the court during the course of the postconviction proceedings indicating that he consulted with defendant, ordered and

reviewed the record, and then determined that no amendments to the petition were necessary as the petition adequately presented defendant's claim of a constitutional deprivation. Additionally, counsel made representations to the circuit court during the course of the postconviction proceedings demonstrating that he consulted with defendant, ordered and reviewed the record, and then determined that no amendments to the petition were necessary as the petition adequately presented defendant's claim of a constitutional deprivation. Defendant does not argue a specific violation of the three requirements of the statute, and he has failed to rebut the presumption that postconviction counsel rendered reasonable assistance in substantial compliance with Rule 651(c). See *Profit*, 2012 IL App (1st) 101307, ¶¶ 18-19.

¶ 47 Defendant argues that his postconviction counsel failed to provide a reasonable level of assistance because counsel failed to obtain an affidavit from defendant to show that Antonio's affidavit should be considered newly discovered evidence and to also show that defendant exercised diligence in obtaining the evidence. Defendant also claims counsel could have obtained an additional or amended affidavit from Antonio to describe why he did not come forward with the information about witness coercion sooner.

¶ 48 Defendant claims that counsel could have obtained an affidavit from him or Antonio Cox confirming that defendant did not know Antonio coerced the witnesses' identifications until he received the affidavit. However, Antonio Cox had already averred in his affidavit that he had been withholding the information until the time he made out the affidavit. In his affidavit, Antonio apologized for withholding the information for the period prior to him executing the affidavit, and he indicated he could no longer keep the information hidden.

¶ 49 Moreover, defendant alleged in his petition that "at no time prior to Defendant receiving Antonio Cox['s] affidavit *** was he or anyone else aware that Cox had met with Wright and

Shield[s] and hatched his plan to have defendant sent to prison \*\*\*." The allegations in defendant's petition and Antonio's affidavit were required to be taken as true and any reasonable inferences were required to be drawn in defendant's favor at the second stage of the proceedings. There is no insinuation anywhere in the record that defendant knew about the alleged coercion at an earlier time. See *People v. Overton*, 2023 IL App (4th) 230110, ¶ 71 (at the second stage, the trial court is required to accept the defendant's well-pleaded allegations as true and make all reasonable inferences in the light most favorable to the defendant).

¶ 50 The affidavits defendant claims counsel should have procured were not necessary for defendant's contentions to be adequately presented to the court because the additional affidavits would have provided only cumulative information if the allegations of the petition are taken as true and Antonio's affidavit is viewed in the light most favorable to the defendant as the law requires. *People v. Jones*, 358 Ill. App. 3d 379, 384 (2005). As explained earlier, the newly discovered evidence is not so conclusive as to undermine the court's confidence in the judgment of guilt. Defendant has failed to rebut the presumption that he received reasonable assistance from postconviction counsel due to the omission of any affidavit. See *Profit*, 2012 IL App (1st) 101307, ¶¶ 18-19.

¶ 51 Defendant also argues postconviction counsel failed to file a written response to the State's motion to dismiss. As for this claim, the mere act of not filing a written response to a motion to dismiss does not automatically constitute unreasonable assistance. See *People v. Williams*, 2025 IL 129718, ¶ 47 (postconviction counsel's failure to file an answer to the State's motion to dismiss, by itself, does not equate to unreasonable assistance of counsel); see also *People v. Conway*, 2023 IL App (3d) 210334-U, ¶ 18 (unpublished order under Illinois Supreme Court Rule 23(e) (eff. Feb. 1, 2023)) (holding that counsel's failure to file a written response to

the State's motion to dismiss did not constitute unreasonable assistance where counsel otherwise investigated and presented the claims in defendant's *pro se* petition). Here, postconviction counsel responded to the State's arguments at a hearing on the motion to dismiss in lieu of filing a written response, and defendant does not claim that counsel's performance at the hearing was deficient. The record shows that counsel aptly advocated for defendant's claimed constitutional violations at the hearing and vigorously argued that defendant's petition should be advanced to the third stage.

¶ 52    Looking at defendant's specific claims of counsel's alleged errors, defendant argues that the State pointed out deficiencies in his *pro se* petition and misstated the standards applicable to actual innocence claims that should have been answered by counsel in a written response. Defendant contends that "the State incorrectly claimed that [he] needed to definitively prove his actual innocence at this stage of the proceedings." Defendant further contends that the trial court adopted the incorrect standard put forth by the State when dismissing his petition, and postconviction counsel's failure to file a written response "led to the judge adopting the State's incorrect standard." However, the State's motion to dismiss cites the applicable standard for a second-stage motion to dismiss an actual innocence claim. The trial court likewise stated the proper standard in its order dismissing the petition where it found that defendant failed to make a substantial showing of actual innocence.

¶ 53    In arguing that the State set forth the incorrect standard, defendant cites a comment made by the State *during oral argument* on the motion to dismiss. There, the State posited that new evidence is only conclusive if it "actually proves actual innocence." But that was a comment made during the hearing on the motion to dismiss, so defense counsel's filing of a written response to the motion would not have had any impact on that statement. Postconviction counsel

actively participated in that hearing and performed in a reasonable manner. In fact, postconviction counsel specifically addressed the issue defendant now raises and countered the State's assertion.

"Finally, Judge, [the new evidence] is of a conclusive character that it *possibly* would have changed the outcome at trial. *We don't need to prove at this point that it definitely would have changed the outcome at trial*. But it is certainly conclusive and possible that the trier of fact, in this case the jury, would have had to weigh the allegations that are contained in Mr. Cox's affidavit when deliberating on this case." (Emphasis added).

Defendant has failed to show reversible error, and we find no basis for overturning the circuit court's decision to dismiss defendant's postconviction petition.

¶ 54                                    CONCLUSION

¶ 55    Accordingly, we affirm.

¶ 56    Affirmed.